## Charles M. Welch v. George Ware.

*Assault and battery: Damages: Evidence: Profits: Theatrical performers: Values.* In an action for damages for an assault and battery evidence of the price plaintiff was paying per week for the board of himself and family, and of the value of the joint services of himself and wife in their occupation of theatrical performers, and of the proportion which his services were worth, is held not open to the objection that it is not within the declaration, which, besides setting out various immediate items of injury and suffering and expenses, avers a hindrance in his affairs and a loss of profits which he would have derived from his occupation and business as a theatrical performer.

*Torts: Damages: Accuracy: Evidence: Business surroundings.* Inability to compute with accuracy the extent of actual pecuniary damage which

WELCH v. WARE.

resulted from the wrongful act complained of, is no ground for the exclusion of such information as may be had, but the wrong-doer must bear the risk, if there be any, of not reaching an exact result from a showing of all the circumstances and business surroundings of the person on whom he has inflicted an injury.

*Profits: Evidence: Theatrical performers: Joint services: Value.* Evidence in such an action of the value of the joint services of plaintiff and his wife, where they were accustomed to engage jointly, could not prejudice the defendant under rulings which limited the recovery to the plaintiff's own share of the joint earnings.

*Evidence: Profits: Actual engagements.* Evidence of the actual gains and engagements of a plaintiff in actions of tort is admissible as one means of reaching the probable profits and losses.

*Business: Value: Theatrical performers: Locality.* And where one's business is not local, but extends generally over the country, like that of a theatrical performer, the opinions and proof of value cannot be confined to the locality of the injury, or to any other locality.

*Assault: Provocation: Evidence: Res gestæ.* Evidence of the plaintiff's acts and purposes in a matter which the defendant has put forward as being the provocation to the assault, and in mitigation of it, is relevant as explaining the surrounding circumstances.

*Instructions to the jury: Inconsistency.* Certain charges complained of as inconsistent and irrelevant are held not to be so.

*Charge to the jury: Comments on facts: Abstract propositions of law.* Complaint that the court commented upon matters of evidence, and remarked upon their significance, is held to be unfounded. It is proper to direct the minds of the jury to the legal bearing of the facts, and to caution them, if needful, against giving undue importance to unimportant things. Instructions to the jury are not to be confined to the mere laying down of abstract propositions of law.

*Instructions to the jury: Construction: Particular phrases or sentences.* It is not allowable in reviewing instructions to the jury to consider particular sentences or phrases as if they were independent, but they must be construed with their context.

*Assault and battery: Exemplary damages: Malice.* Vindictive or exemplary damages are not improper in a case of willful and malicious assault and battery.

*Damages: Pecuniary losses: Malice.* It is not an open question in this state, that damages are to be given not only for grievances beyond pecuniary losses, but also in accordance with the malice of the offender.

*Torts: Excitement: Unreasonable anger: Voluntary intoxication.* No one can claim exemption from responsibility by reason of excitement when his anger is unreasonable and results from a neglect to use ordinary self-control. No one has the right to allow his temper to become uncontrollable; and this can no more excuse a wrong inflicted than could voluntary intoxication.

*Torts: Damages: Instructions to the jury: Discretion: Good sense.* In cases like this, where all the surroundings are placed before the jury, and where the damages are so largely discretionary, it is utterly impossible to fix any very precise rules to guide the jury, beyond such cautions as may guard them against allowing scope to prejudice and passion; but much must be left to the general sense of jurors, as representing what may be regarded as the common sense of ordinary men on similar facts.

*Heard April 23. Decided April 27.*

Error to Superior Court of Detroit.

WELCH *v.* WARE.

*Moore & Griffin* and *Hoyt Post*, for plaintiff in error.

*Van Dyke & Brownson,* for defendant in error.

CAMPBELL, J :

Ware recovered judgment for damages against Welch for an assault and battery committed February 16, 1874. The declaration, besides setting out various immediate items of injury and suffering and expenses, averred a hindrance in his affairs and business, and a loss of profits which he would have derived from his occupation and business as a theatrical performer.

There was considerable conflict as to the exact incidents of the assault, upon which several witnesses appear to have been examined,—no important testimony on that head, however, being inserted in the bill of exceptions, except that of plaintiff and defendant.

Welch is owner of a theater in Detroit, and plaintiff and his wife had concluded an engagement on the 14th of February, which was Saturday. During the week before the assault a charge seems to have been made against another actor, of a felonious assault upon a young child performing in the theater, for which he was arrested. The child, although in his charge and bearing his name, appears not to have been his own. There is evidence of various transactions bearing on alleged attempts or measures to get this man out of the country, in which there was conflicting testimony concerning the complicity of both parties to this suit, and similar conflicting testimony concerning their attempting to get the child out of the way to prevent the prosecution.

On Monday, February 16, Welch appears, or is claimed to have got a suspicion that Ware had been engaged in stirring up the difficulty for the purpose of getting the child, who was an attractive performer, away from Welch's theater, and not in good faith. That evening he sent for Ware to come over to a saloon near the theater, and on his arrival an altercation followed, on which the testimony clashes. As

the case was put to the jury upon the differing claims of the parties, they must have found that Welch made an assault upon Ware without adequate provocation, whereby the latter received serious injuries, and was for a time disabled from following his business. It appears that Ware and his wife have been in the habit of performing in joint engagements. Some of the questions upon damages grew out of this.

Objections were made upon the reception of testimony, and upon the charges of the court. Upon some of the questions the points can be disposed of together; and upon some of the rulings the previous decisions of this court will render extended comments unnecessary.

Upon the loss of time and professional gains the objections to testimony apply to proof of the sum he was paying per week for the board of himself and family, and of the value of the joint services of himself and wife, and of the proportion which his services were worth. Objection was also made to the estimate of witnesses, as not local, and as indefinite, and to the charge of the court, leaving indefinite testimony to the jury. Also to proof of actual engagements, and the amounts earned under them.

We think the objection that such proof was not within the declaration, if otherwise competent, cannot be maintained. This subject was very fully discussed in *Chandler v. Allison, 10 Mich. R., 460,* and *Allison v. Chandler, 11 Mich. R., 542,* where the admissibility of a great variety of circumstances was upheld, as explaining the various ways in which profits had been diminished. It is necessary to inform the jury as thoroughly as possible concerning all the circumstances and business surroundings of the plaintiff. Unless they know his expenses and the value of his earnings, they will lose information of the first importance concerning the extent of his pecuniary damage. It was held in those cases that inability to compute these with accuracy, is no reason why the jury should not get such information as may be had; and that a wrong-doer must bear the risk, if there is any,

of not reaching an exact result, because it is not the plaintiff's fault that the inquiry has become necessary. Where no better means can be had, the jury must use their best judgment, and it is to be presumed that counsel will urge before them all considerations which will aid them in avoiding injustice.

So far as this joint engagement is concerned, the charge of the court confined the right of recovery to Ware's own share of the earnings. This was favorable enough. There is no rule which would necessarily determine that the husband is to enjoy no more than such a proportion, and it would not be strange or unreasonable if a wife should abstain from any engagements away from her husband. The defendant below was not damnified by any of these rulings.

Evidence of the actual gains and engagements of a plaintiff, in actions of tort, is held admissible, as one means of reaching his probable profits and losses, in the cases before cited. And inasmuch as this actor's business was not local, but extended generally over the country, the opinions and proof of value could not be confined to Detroit or any other locality.

Upon the question of allowing damages from loss of probable gains, and the means of estimating them, see also *Gilbert v. Kennedy, 22 Mich. R., 117 ; Burrell v. N. Y. & Saginaw Solar Salt Co., 14 Mich. R., 34.* And for limitations on this subject see *Allison v. Chandler, supra,* and *Warren v. Cole, 15 Mich. R., 265.*

For the construction applicable to allegations of damages, see the cases before cited, and *Johnson v. McKee, 27 Mich. R., 471.*

Objection was made to allowing Ware to explain why he tried to get the child away. The assault grew out of this very subject, and Ware had sworn to various measures which he claimed to have taken at Welch's request, or in concert with him. This testimony was relevant as explaining the surrounding circumstances, and as bearing upon the alleged

provocation to the assault. If the parties had been doing as Ware says they did, it would have indicated not only that Ware had not injured Welch, but also that Welch had no sufficient cause for supposing he had. The force of all this evidence was for the jury to measure.

In this connection complaint is made of two charges given at the request of counsel for plaintiff below, as follows:

"3d, That in determining whether Welch heard that plaintiff was endeavoring to abduct Baby McDonald, and believed he was so endeavoring, the jury ought to regard the circumstances that Ware wrote, and went with Welch to send, a telegram to the child's mother; that Welch and Ware understood that the child had been placed in the Home of the Friendless; that Welch admits that he advised McDonald, if guilty, to flee, and that he admits that a few hours after that advice he gave Ware thirty dollars for McDonald;

"4th, That it was not Welch's duty to protect Baby Mc-Donald; and the fact that he admits he did not know where she was from Friday, the day of her father's arrest, until after the assault upon Ware, is a circumstance which the jury ought to consider in determining whether his assault upon Ware was prompted by solicitude for the welfare of the child."

It had been shown by a witness that the child was at the Home of the Friendless from February 14 till February 20. Although this was objected to, we cannot conceive any reason for excluding it. The whole claim in mitigation of damages turned upon this child, and what had been done, or intended to be done about her custody and removal. The fact that she was taken to the Home of the Friendless was drawn out first by the questions of defendant's counsel in cross-examining Ware. The bill indicating that no objection was made at the time, that these charges were not based on undisputed facts, and that the exception was general, and the absence of the testimony of all the witnesses but the parties depriving us of any means of determining the truth, we cannot assume the allegations were unwarranted. The

line of defense tends to show the contrary, as far as it bears on the question of probabilities.

It is claimed the charges are inconsistent. But we think not. It is quite possible that Welch supposed the child was at the Home of the Friendless, and that he actually knew nothing about it. The fourth charge is based on the argument, that if he had the solicitude which he claimed, he would have seen for himself and known her whereabouts, and should have had knowledge beyond information.

We think the charges were relevant, and that it was entirely proper to direct attention to the facts referred to, as having a very positive bearing on the issues on trial. The complaint that the court commented upon other matters of evidence, and remarked upon their significance or want of significance, rests upon no better basis. A judge in charging a jury can do them no good, but will rather confound them, by laying down abstract propositions of law. He must direct their minds to the legal bearing of the facts, and in doing so he is guilty of no breach of propriety in cautioning them against giving undue importance to unimportant things. It is not to be presumed that in doing this any jury will suppose that such remarks are legal propositions, or intended to interfere with their prerogative of deciding on the facts. Neither is it allowable to consider particular sentences or phrases as if they were independent. They cannot mislead the jury, where they are in fact only extracts from a continuous and full charge, unless they have an erroneous bearing when read with what belongs with them. When presented as separate and distinct requests or charges, they may stand on a different ground.

The remaining questions all bear upon the power and duty of the jury in measuring damages and in passing on questions of mitigation and aggravation. They can be best considered together. And as our own decisions have determined all of the points discussed, we do not feel called upon to do any more than refer to them.

The jury found in this case, by giving any verdict at all

for Ware, that he had been assaulted willfully and without justification.   He was therefore entitled beyond controversy to all of his actual damages.   He was evidently allowed here an amount exceeding his pecuniary losses.   But it is claimed that a plaintiff can recover no more than his actual damages, and that these cannot be increased or aggravated by the vindictive feelings or the degree of malice of the assailant, from which it is claimed no additional harm can come to the party injured.   And it. is urged that vindictive or exemplary damages are improper.

The common .sense of mankind has never failed to see that the injury done by a willful wrong to person or reputation, and in some cases to property, cannot be measured by the consequent loss in money.   A person assaulted may not be disabled or even disturbed in his business, and may not be put to any outlay in repairs or medical services.   He may not be made poorer in money, directly or consequentially. He may incur no pecuniary damage whatever.   And it is very clear that the shame and mental anxiety and suffering or indignation consequent on such a wrong are not capable of a money measurement.   No one would avow in advance that he would be willing for a given sum to meet that experience;   and no one who should seek it as a means of putting money into his pocket would be likely to receive compensation at the hands of a jury.

So a person who is struck down by a blow from the arms of a windmill may be much more seriously hurt than by a blow from a fist or whip.   But no one would dream of comparing these injuries by their physical effects.

· When the law gives an action for willful wrongs, it does it on the ground that the injured person ought to receive pecuniary amends from the wrong-doer.   It assumes .that every such wrong brings damage upon the sufferer, and that the principal damage is mental, and not physical.   And it assumes further that this is actual, and not metaphysical damage, and deserves compensation.   When this is once recognized, it is just as clear that the willfulness and wicked-

ness of the act must constitute an important element in the computation, for the plain reason that we all feel our indignation excited in direct proportion with the malice of the offender, and that the wrong is aggravated by it.

If actual damage is not confined to pecuniary consequences, and cannot be measured by a money standard, all redress in damages must partake of a punitory character to some extent, and the line between actual and what are called exemplary damages cannot be drawn with much nicety. In every such case the jury are compelled to determine from their own sense of justice, and their knowledge of human nature, what the amount of damages should be. When the amount to be recovered must in all cases rest in their fair and deliberate discretion, the law can give them no precise instructions. It aims to do justice by directing them to distinguish between provoked grievances and those which are unprovoked, or for which the provocation is in great disproportion to the wrong, making adequate compensation in all cases, but giving heavier damages in all cases where the wrong is aggravated by bad motives or malice. It would be of very little use to present the law to a jury upon any theoretical basis. The rule is intelligible and has not been found to work badly in practice. But whether this rule involves merely compensation, or whether it is based on a theory of punishment, is not very important in practice, and does not come within the domain of law, so long as the jury are obliged to estimate by their own good judgment.

It is not an open question in this state, that damages are to be given not only for grievances beyond pecuniary losses, but also in accordance with the malice, or want of malice, of the offender.

In *Page v. Mitchell, 13 Mich. R., 63,* it was held that for a personal injury it was not necessary to aver or prove special damages, and that without such averment or proof the jury should give such general damages as in their opinion were just under the circumstances. This principle is also recognized in *Johnson v. McKee, 27 Mich., 471;* and

*Josselyn v. McAllister, 22 Mich. R., 300, and 25 Mich., 45.*

The doctrine that want of malice may be shown in mitigation to prevent the aggravation of damages, is recognized in *Farr v. Rasco, 9 Mich., 353 ; Huson v. Dale, 19 Mich. R., 17 ; Allison v. Chandler, 11 Mich., 542 ; Kreiter v. Nichols, 28 Mich. R., 496 ; Ganssly v. Perkins, 30 Mich. R., 492; Detroit Daily Post Co. v. McArthur, 16 Mich. R., 447,* as well as in the other cases generally in which the subject of damages is discussed.

The general doctrine concerning the aggravation of damages by willful and wanton misconduct, and the powers and duties of jurors in actions of tort, is further illustrated in the following cases:—*Tefft v. Windsor, 17 Mich. R., 486 ; Warren v. Cole, 15 Mich. R., 265 ; Brushaber v. Stegemann, 22 Mich. R., 266 ; Swift v. Applebone, 23 Mich. R., 252 ; Leonard v. Pope, 27 Mich. R., 145 ; Sheahan v. Barry, 27 Mich. R., 217.*

The law in its application to this subject takes full account of the infirmities of human nature, and holds no one to any impossible or unreasonable standard. But, on the other hand, it cannot, for the safety of society, be tolerated that any one can claim exemption from responsibility by reason of excitement, when his anger is unreasonable and results from a neglect to use ordinary self-control. No one has the right to allow his temper to become uncontrollable. Voluntary intoxication is held to be no excuse for crime, because every one knows what drunkenness may lead to, and such crime is therefore not the mere result of the temporary unsoundness of mind.—*Roberts v. People, 19 Mich., 401.* The danger of unbridled passion is quite as obvious, and where provocations are laid up and acted on after there has been ample time for reflection and self-control, the use of violence without any further adequate cause can seldom be regarded as lacking in malice, and as not aggravated by it. If the assailant is not actually impelled by it, it cannot, of course, be regarded as a motive for an act into which it did not enter.

The court allowed the jury to consider all the facts before them, and we do not find any charge which could have misled them to the injury of plaintiff in error. They were allowed a broader range in mitigation than would have been usual in charges of crime, and this was proper, for the conduct of both parties must be considered in fixing damages. The jury saw them both, and from the fact that their testimony is all that is put into the bill of exceptions, it is probable they were chiefly or greatly influenced by this evidence of the actors themselves. As the damages have not been made the ground of applying for a new trial, it is presumable they were not regarded as extravagant by the court below. But with their amount we are not concerned.

In cases like this, where all the surroundings are before the jury, and where the damages are so largely discretionary, it would be utterly impossible to fix any very precise rules to guide the jury. Beyond such cautions as may guard them from allowing scope to prejudice and passion, any specific rules would hardly be rules of law, in most cases, and experience has shown they have so little effect on juries that it is questionable whether they understand them. There are no cases in which more respect is paid to the general sense of jurors, as representing what may be regarded as the common sense of ordinary men on similar facts,—and the law has been allowed to rest on this discretion as quite as likely to do justice as any other standard. It is sometimes abused, but its average working is not unjust. Arbitrary rules could hardly fail to be mischievous.

The judgment must be affirmed, with costs.

The other Justices concurred.