## BLUMA ZINKFEIN *vs.* W. T. GRANT COMPANY.

Essex.   January 20, 1920. — June 24, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*False Imprisonment.   False Arrest.   Pleading, Civil,* Declaration.   *Slander.*

In a count in a declaration in an action of tort by a woman against a corporation owning and conducting a department store, the plaintiff alleged "that she is a person of good fame and credit, yet the defendant by its servants and agents, . . . wickedly contriving and maliciously intending to injure the plaintiff, destroy her character and reputation and expose her to trouble did falsely and maliciously accuse without any just and probable cause, that she had stolen certain merchandise from its store, whereupon it caused her to be arrested and she was arrested by means of said false and malicious accusations and imprisoned in a room in the building . . . [a court house] and without being brought before any court or without any complaint being made upon such accusation, she was permitted after such imprisonment to leave said room . . . that she was entirely clear and innocent of the said charge of larceny and that by means of the false and malicious accusations of the defendant, by its servants and agents she had suffered imprisonment and thereby she hath suffered great ignominy and reproach." *Held,* that in legal effect the plaintiff sought to recover for the causing of her arrest unlawfully, and not for the slanderous words used; and that the count did not charge malicious prosecution.

In a second count of the declaration in the action above described the plaintiff alleged that the defendant by its servants and agents falsely imprisoned the plaintiff.   At the trial of the action, it appeared that, a store detective employed by the defendant having seen two persons stealing ribbon valued at $5 from the store, one of them was apprehended and the other escaped.   The next day, while the general manager of the store and the store detective were in a district court room as witnesses for the trial of the apprehended woman, the detective saw the plaintiff, and, speaking to the manager and to a police inspector, accused her of the theft.   The police inspector thereupon ordered the plaintiff into another room in the same building where she was confined against her will and was further examined by him and by the chief of police in the presence of the sales manager and the store detective, who persisted in their accusation, and of an interpreter and a stenographer, and that, during the confinement and examination, her husband was refused admission to the room by the police inspector, who told him that she was "arrested."   The plaintiff later was released from the room, was never brought before any court, no complaint was made against her and no warrant for her arrest was asked for, nor did the defendant ask police authorities for any investigation of the charge against her.   The plaintiff had nothing to do with the theft from the defendant's store.   The judge refused to order a verdict for the defendant, and there was a finding for the plaintiff.   *Held,* that

(1) There being no evidence to warrant a finding that the acts of the police inspector were done otherwise than on his own initiative and judgment, a finding was not warranted that the defendant by its servants and agents unlawfully arrested the plaintiff, and a verdict should have been ordered for the defendant on the second count;

(2) For the same reason, a finding was not warranted that the defendant caused the plaintiff to be falsely arrested, and a verdict should have been ordered for the defendant on the first count;

(3) *Whether* knowledge on the part of the defendant, its servants or agents, of the falsity of the charge against the plaintiff or of facts which would have been the equivalent of such knowledge, and the malice inferable therefrom would have been sufficient to render the defendant liable in an action for false imprisonment, here was not determined, because no evidence was offered justifying the finding of such facts;

(4) The crime charged against the plaintiff by the defendant's manager and detective was a misdemeanor;

(5) *It seems*, that the plaintiff was not remediless, since an action will lie for a slanderous charge of a crime made in the presence of a police officer.

TORT, with a declaration in three counts. Writ dated October 23, 1916.

The first count of the declaration was as follows: "And the plaintiff says that she is a person of good fame and credit, yet the defendant by its servants and agents, . . . wickedly contriving and maliciously intending to injure the plaintiff, destroy her character and reputation and expose her to trouble did falsely and maliciously accuse without any just and probable cause, that she had stolen certain merchandise from its store, whereupon it caused her to be arrested and she was arrested by means of said false and malicious accusations and imprisoned in a room in the building . . . [a court house] and without being brought before any court or without any complaint being made upon such accusation, she was permitted after such imprisonment to leave said room. Now the said plaintiff, in fact says that she was entirely clear and innocent of the said charge of larceny and that by means of the false and malicious accusations of the defendant, by its servants and agents she had suffered imprisonment and thereby she hath suffered great ignominy and reproach."

In the second count false imprisonment of the plaintiff was alleged and in the third count slander was alleged.

In the Superior Court the action was tried before *Quinn*, J. The material evidence is described in the opinion. At the close of the evidence the defendant moved that verdicts be ordered in

its favor on the first and second counts. The motion was denied, and the jury found for the plaintiff on the first and second counts in the sum of $200. The defendant alleged exceptions, which, the bill of exceptions stated, "concern only the first and second counts."

The case was submitted on briefs.

*C. N. Barney & W. A. Bishop,* for the defendant.

*P. A. Kiely,* for the plaintiff.

JENNEY, J. The declaration is in three counts, two of which are now involved. The record gives no information concerning the disposition made of the third count, which is for slander.

The first count avers that, although the plaintiff was innocent, the defendant falsely, maliciously, and without probable cause accused her of the theft of merchandise from its store, whereupon it caused her to be arrested and imprisoned on said charge, without the prior making of any complaint or the issuance of any warrant authorizing her detention; and that she was discharged from arrest without having been brought before any court. In legal effect, the plaintiff seeks to recover damages for her arrest and not for the slanderous words used.

The second count alleges that the defendant "by its servants and agents maliciously and with intent to injure this plaintiff, did, by force and against [her] will" imprison her without reasonable cause and without right or authority.

The defendant is a corporation conducting department stores in several cities. On December 11, 1914, two women came into its store in Lynn and "stole ribbon to the value of $5." One of these, Annie Norkas, was apprehended at the time, and the other escaped. A female detective employed in the store by the defendant saw the occurrence. The general manager, who "was the [person] highest in authority in the employ of the defendant in Lynn," also saw the woman who committed the theft. "It was the duty of this . . . detective to watch people in the store, to prevent them from stealing, if possible, and if merchandise was stolen to cause them [the guilty persons] to be arrested." The next day Annie Norkas was tried for this theft in the district court in Lynn. While the general manager and the detective were in the court room as witnesses at this trial, the latter there saw the plaintiff, who happened to be present as a witness in an-

other case. Whereupon the detective "came up" to the plaintiff, looked at her, and said to the manager, "There is the other woman that stole the ribbon from our store," and then asked some one standing near by, "Where is there a police officer?" Stacey R. Burckes, a police inspector of Lynn, "happened to come along at that moment;" and the detective, in the presence of the manager, repeated the charge to him, stating that "the plaintiff had taken ribbon at the value of $5 from the counter of the defendant's store, handing them to another woman to put them in her bag." The inspector ordered the plaintiff, who knew that he was a police officer, to come with him; and she went with him into the room of the probation officer in the same building. While going to this room, the manager and the detective each repeated the charge of theft. The evidence clearly warranted a finding that the plaintiff was imprisoned in this room by the inspector, who locked the door and refused to permit her to leave. In the room at this time were also the chief of police of Lynn, the manager, the private detective, an interpreter and a stenographer. The complete story of what there happened is as follows:

"She [the plaintiff] told them that she was never in the defendant's store. The inspector put his hand on the door so that the plaintiff could not go out. The chief of police said to the store detective, 'The plaintiff says she did not steal anything from your store; that she never was in your store.' The store detective said, 'I know she is the woman. This is the woman.' The inspector said to the plaintiff, 'Tell where you put the ribbon or you will be put to jail.' The plaintiff replied, 'I never stole in my life. You know me. I keep a store.' The police inspector said, 'Yes, I know this lady. I do not think she stole this ribbon, as she has a store of her own and sells ribbon.' The store manager said, 'She is the woman who stole.'

"The plaintiff's husband knocked at the door and said, 'I want my wife to come out of the room.' The police inspector said, 'She is arrested,' and shut the door in his face. A little later she was released from the room. She was not brought before any court. The district court was then in session. No complaint was made against her, and no warrant for her arrest asked for. The defendant did not make any complaint at the police headquarters and did not ask for any investigation . . .

of the charge against the plaintiff. The defendant did not ask police inspector Burckes to investigate the charge, neither did the defendant make any investigation of the plaintiff, as to who she was or what her business was."

The exceptions further recite:

"The statement of the store manager and the store detective that the plaintiff had stolen merchandise was not true. The plaintiff did not steal any merchandise from the defendant's store; she did not know Annie Norkas; was never with her; was never in the defendant's store. She had nothing to do with the larceny of the merchandise from the defendant's store. There was nothing suspicious about the plaintiff."

At the close of the evidence, the defendant moved that a verdict be ordered in its favor on the first and second counts, on the pleadings and evidence. The motion was denied, subject to exception, and a general verdict of $200 for the plaintiff was returned on these counts.

The jury should have been instructed that the plaintiff was not entitled to a verdict on the second count, which was for false imprisonment. While there was evidence that the manager and detective acted within the authority conferred upon them, (*Mills* v. *W. T. Grant Co.* 233 Mass. 140,) all that they did was to charge the plaintiff with theft. They did not take part, except by their presence, in the plaintiff's detention, or in the subsequent proceedings. It is clear that the police detective proceeded wholly on his own initiative and judgment and in the performance of his duty as a public officer in all that he did, and not in behalf of the corporation or at the direction of its representatives. In an action for false imprisonment, where a wrongful arrest has been made on information given by a defendant, there is no liability on the part of the informant for the arrest unless the officer acted under the direction of the defendant or as his agent. *Dixon* v. *New England Railroad,* 179 Mass. 242. *Burnham* v. *Collateral Loan Co.* 179 Mass. 268. *Sewell* v. *National Telephone Co. Ltd.,* [1907] 1 K. B. 557. See *Robinson* v. *Van Auken,* 190 Mass. 161; *Mason* v. *Jacot,* 235 Mass. 521. Whether knowledge of the falsity of a charge made, or the equivalent of knowledge, and the malice inferable therefrom or otherwise proved, are sufficient to render a defendant liable in an action for false imprisonment, when the

arrest was not made by him or in his behalf or under his direction, and where the arrest was not made on any legal process, need not be considered.  See *Stone* v. *Crocker*, 24 Pick. 81; *Mullen* v. *Brown*, 138 Mass. 114; *Wood* v. *Graves*, 144 Mass. 365; *Everett* v. *Henderson*, 146 Mass. 89; *Swift* v. *Witchard*, 103 Ga. 193. The plaintiff, on whom the burden rested to prove such facts, assuming that they were material, offered no evidence justifying a finding that the accusation, when made, was known to be untrue or that it was made in reckless disregard of the plaintiff's rights or that there was actual malice in its utterance.

Inasmuch as the defendant was not liable for the arrest in an action for false imprisonment, it is not material whether the accusation was of a felony or a misdemeanor.  But as the case may be tried again, the question is considered.  There was nothing in the charge to indicate that the property when stolen was "under the protection of the building, placed there for safe keeping, and not under the eye or personal care of some one in the building" (*Commonwealth* v. *Lester*, 129 Mass. 101, 103); and the value of the property being under $100, the crime charged was a misdemeanor.  R. L. c. 208, §§ 20, 26; c. 215, § 1.

The first count, described in the bill of exceptions as one "for causing the plaintiff to be falsely arrested," also is for false arrest. On the facts of this case there can be no valid distinction between a liability for an arrest directly charged as made by the defendant and that for causing another to make it.  In both cases if the arrest is so caused and directed as to make the act that of the defendant, liability follows on precisely the same grounds.  The first count did not charge malicious prosecution, because it was not alleged that there was a proceeding preferred in court and because the existence and sufficient termination of such prosecution are essential elements in an action for malicious prosecution. *Stone* v. *Crocker*, *supra*, at page 87.  *Cardival* v. *Smith*, 109 Mass. 158.  *Mitchell* v. *Donanski*, 28 R. I. 94.  *O'Driscoll* v. *M'Burney*, 2 Nott & M'Cord, 54.  *Heyward* v. *Cuthbert*, 4 M'Cord, 354. *Clarke* v. *Postan*, 6 C. & P. 423, and *Dawson* v. *Vansandau*, 11 Wkly. Rep. 516, so far as at variance with this fundamental requirement, must be disregarded.  The remedy for an imprisonment wrongfully caused must be either in a direct action for trespass, or in that for malicious prosecution.

It does not follow that one in the situation of the plaintiff is remediless, for an action will lie for a slanderous charge of a crime made in the presence of a police officer. *Bodwell* v. *Osgood,* 3 Pick. 379. *Robinson* v. *Van Auken, supra. Mills* v. *W. T. Grant Co. supra.* See Bigelow, Lead. Cas. Torts, 205; 1 Am. Lead. Cas. (5th ed.) 258.

In the opinion of a majority of the court, the defendant's motion that a verdict be ordered in its favor upon the first count, as well as upon the second, should have been allowed, and the exceptions must be sustained; and it is

*So ordered.*