# DEADERICK v. SMITH (two cases).—230 S. W. (2d) 406.

Middle Section.  January 13, 1950.

Petition for Certiorari denied by Supreme Court, June 7, 1950.

D. F. Blackmon and Jack Keefe, both of Nashville, for plaintiff in error.

R. T. Cochran and Martin & Cochran, all of Nashville, for defendants in error.

HOWELL, J.  These are damage suits filed by Robert Wayne Smith, referred to in the record as "Toby", a minor, thirteen years of age, by next friend and by Albert L. Smith, father of Robert Wayne Smith against Dainey Deaderick and Robert Northern, a son-in-law of defendant Deaderick. The suits were dismissed as to the defendant Northern, leaving Dainey Deaderick the only defendant.

Upon the trial in the Circuit Court before the Court and jury, there were judgments rendered in favor of Toby Smith for $2,500 as compensatory damages and $250 as punitive damages, in all $2,750 and in favor of Albert L. Smith for $2,500 as compensatory damages and $250 as punitive damages, in all $2,750, and the costs.

The defendant has properly perfected an appeal in error to this Court and has assigned errors.

The declaration in the case of the minor Toby Smith alleges that the plaintiff lives with his father and mother and three minor brothers and sisters at 736 Hamilton Avenue in Nashville and that on March 20, 1948, the defendant procured a city detective, C. D. Clark, to accompany him to plaintiff's home while plaintiff's parents were not at home and that detective Clark, at the instigation of defendant Deaderick and with his knowledge and consent and without any warrant or authority forced the plaintiff minor into Deaderick's automobile which was parked in front of his home and there with the knowledge and consent of defendant Deaderick did for sometime con-

fine, restrain and hold plaintiff against his will and in the presence of neighbors and his minor brothers and sisters and questioned, accused, threatened and intimidated plaintiff with words which plaintiff feared to disregard.

The declaration in the father's case alleges that plaintiff is a life-long resident of Nashville and lived with his family at 736 Hamilton Avenue and that on the morning of March 19, 1948, his thirteen year old son Toby brought to him a paper shopping bag containing a brief case and an overcoat which he, Toby, had found in an old rock quarry, used as a public dump, near their home; that the fact that Toby had found these articles at the dump was known to others in the neighborhood and on the afternoon of the same day, the son-in-law of the defendant came to plaintiff's home accompanied by a Mr. Hessy and advised plaintiff that the articles found by Toby had been stolen from defendant's automobile while it was being used by the son-in-law, Northern. Northern could not describe the articles and later defendant and Northern returned to plaintiff's home and defendant did identify the articles as belonging to him and plaintiff offered to turn them over to him; that the defendant Deaderick advised plaintiff that another party was interested in the articles and he would rather this party receive them. The declaration further alleged that on the afternoon of the next day, while plaintiff and his wife were away from home shopping at a nearby store, the defendant accompanied by a city detective C. D. Clark came to his home, while nobody was there except his minor children and were told that plaintiff and his wife were at a nearby store and would be home in a few minutes, whereupon defendant without saying anything further to the children, motioned to detective Clark and

told him to come on in as he knew where the "stuff" was and thereupon both defendant and Clark unlawfully and wilfully without warrant and with wanton and reckless disregard of the rights of plaintiff to the security of his home and to its use and enjoyment did wilfully enter and trespass upon the home of plaintiff, going inside thereof, removing the brief case from the top of a piece of furniture and the overcoat from a closet and thoroughly searched the house; that after leaving the house detective Clark walking behind him and guiding him instructed Toby to get into the back seat of defendant's automobile where he detained and imprisoned him for several minutes, while accusing, threatening and intimidating Toby and accused him of taking the article mentioned from defendant's automobile.

The declaration also alleged that this unlawful entry and search of plaintiff's home was viewed by residents of the neighborhood, and that plaintiff has suffered great humiliation, embarrassment and mental anguish.

The pleas were not guilty.

The assignments of error raise principally the questions that there is no evidence to sustain the verdicts, the verdicts are excessive and that the Court erred in charging the jury.

■ We have set out the allegations of the declaration rather fully and without detailing the testimony which we have carefully read and studied, we are satisfied that there was ample evidence which would justify the jury in finding the facts substantially as alleged in the declarations and in finding the defendant did without any warrant unlawfully enter and search the plaintiff's home in the temporary absence of plaintiff and his wife and in the presence of the minor children and some neighbors

and that he did procure the officer Clark to enter and search plaintiff's home and to wrongfully detain, hold and restrain the young son Toby against his will and wrongfully accuse him of stealing the lost articles and that defendant and detective Clark did unlawfully invade the sanctity of plaintiff's home.

It is said that many years ago William Pitt, a great Prime Minister of England, in a speech said: "The poorest man may in his cottage bid defiance to all the force of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter,—but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement."

In the case of Townsell v. L. & N. Railroad Co., 4 Tenn. Civ. App. page 211, that Court said: "But as a matter of fact this suit should not be regarded as a technical action for malicious prosecution either by statute or by common law rule. It should be looked upon as an action upon the facts for the redress of wrongs. It should be treated really more as an action of trespass, a suing for a wrongful entry upon and search of one's premises in an aggravated and offensive manner, with the implication that the party had committed the crime of larceny or of receiving stolen goods."

In the Telephone and Telegraph Co. v. Stoneking, 1 Tenn. Civ. App. page 241, the Court said: "It is too firmly settled to be controverted that every one who actively participates, aids or directs the committing of a trespass, is liable jointly with all the other participants. And this is true even as to a menial servant."

In Wilkins v. Gilmore, 21 Tenn. 140, the Supreme Court said:

"As to the first proposition in this charge, that the action of trespass will lie for an injury done by another by the command, authority, or procurement of the party charged, there can be no doubt. Whoever procures or commands another to commit a crime, or do a civil injury, is guilty of the offense himself, as a principal in the first degree. Hence, if a slave or a servant commit a trespass by the command or encouragement of the master, the master is guilty of it. 1 Bla. Com. 431, 432; Campbell v. Stairet, [6 N. C. 389] 2 Murph. 389; McManus v. Crocket, 1 East, 106.

"The second proposition is equally clear. In an action of trespass the jury are not restrained, in their assessment of damages, to the amount of the mere pecuniary loss sustained by the plaintff, but many award damages in respect of the malicious conduct of the defendant, and the degree of insult with which the trespass has been attended."

In the case of Norvell v. Gray's Lessee, 31 Tenn. 96, the Court said: "A peaceable entry does not mean one merely unaccompanied with actual violence, or breach of the peace. In law every entry upon the soil of another, in the absence of a lawful authority, without the owner's license, is a trespass. And it matters not that there was no actual force, for the law implies force, and damage likewise, in every unauthorized entry, or trespass quaere clausum fregit."

Many other cases might be cited but we find the law to be that the wrongful entry and search of a person's home for stolen property is such an invasion of his rights as to cause mental suffering and humiliation for which the wrongdoer must respond in damages, though incapable of actual measurement and though the act did not affect such person's standing in the community.

158

See Krehbiel v. Henkle, 152 Iowa 604, 129 N. W. 945, 133 N. W. 115, Ann. Cas. 1913B, 1156. In that case the Iowa Supreme Court said further quoting from a Michigan case, Welch v. Ware, 32 Mich. 77: ''The common sense of mankind has never failed to see that the damage done by a willful wrong to person or reputation, and, in some cases, to property, is not measured by the consequent loss of money. A person assaulted may not be disabled or even disturbed in his business, and may not be put to any outlay in repairs or medical services. He may not be made poorer in money, directly or consequentially. He may incur no pecuniary damage whatever. . . . When the law gives an action for a willful wrong, it does it on the ground that the injured person ought to receive pecuniary amends from the wrongdoer. It assumes that every such wrong brings damage upon the sufferer, and that the principal damage is mental, and not physical; and it assumes, further, that this is actual, and not metaphysical, damage, and deserves compensation.''

The only lawful method of making a search of the plaintiff's premises, without his consent, would have been under the authority of a search warrant.

█ As to the wrongful detention of the boy Toby.

In the case of Little Stores v. Isenberg, 26 Tenn. App. 357, 172 S. W. (2d) 13, 16, Burnett, Judge says:

''The American Law Institute has defined 'false imprisonment' as follows:

'' 'An act which, directly or indirectly, is a legal cause of a confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other irrespective of whether harm is caused to any legally protected interest

of the other, if the act is intended so to confine the other or a third person, and the other is conscious of the confinement, and the confinement is not consented to by the other, and the confinement is not otherwise privileged.' Restatement, Torts, Vol. 1, page 66, sec. 35.

"The essence of this tort is in depriving the plaintiff of her liberty without justification. No actual force or threats are necessary. A person has the right of free locomotion, to go and come as they choose, so long as they do not trespass on the rights of others."

In American Jurisprudence 15, on page 596 it is said: "The rule allowing recovery of damages for mental anguish and suffering in cases involving wilful, wanton, and malicious acts is especially applicable in cases affecting the liberty, character, reputation, personal security, or domestic relations of the injured party—as, for example,. those involving assault, illegal arrest, malicious prosecution, false imprisonment, wrongful search, seduction, libel and slander, invasions of the right of privacy, breach of contract to marry, and injuries or indignities to the bodies of the dead."

It is insisted that the amounts of the verdicts are excessive. In cases of this kind the question of the amount of the verdict is peculiarly a question for the jury. There is no method of calculating the extent of the damages in dollars and cents and the amount of the recovery should be left to the discretion of a jury subject to the approval of the trial Judge, unless this amount is exorbitant and the result of passion,. prejudice,. or caprice on the part of the jury. Such does not appear in this case.

In the case of Phillips et al. v. Newport, 28 Tenn. App. 187, 187 S. W. (2d) 965, 973, this Court said:

"The amount of damages is primarily a question for the jury; and their verdict is entitled to great weight in this court when the trial court has approved it, if there is no claim that the verdict is corrupt or dishonest. Lunn v. Eealy, 176 Tenn. 374, 141 S. W. (2d) 893; Sweeney v. Carter, 24 Tenn. App. 6, 137 S. W. (2d) 892; Municipal Paving & Construction Company v. Hunt, 22 Tenn. App. 380, 123 S. W. (2d) 843; Rice-Stix Dry Goods Company v. Self, 20 Tenn. App. 498, 101 S. W. (2d) 132.

"Where the pleadings and proof justify the assessment of punitive damages, the allowance of such damages is a matter of discretion with the jury. Simpson v. Markwood, 65 Tenn. 340; Ferguson v. Moore, 98 Tenn. 342, 39 S. W. 341; Louisville, [& N.] R. Company v. Satterwhite, 112 Tenn. 185, 79 S. W. 106; Davis v. Farris, 1 Tenn. App. 144; Grizzard & Cuzzort v. O'Neil, 15 Tenn. App. 395."

In this case we find that there was an illegal and unlawful entry into and search of the home of the plaintiff Albert L. Smith and an unlawful detention and accusation of the boy Toby and that both of them were entitled to recover damages to be fixed by the jury for their mental suffering and humiliation.

It is insisted that the trial Court erred in its charge to the jury and in acting upon exceptions to certain testimony.

We have carefully considered the charge of the Court and we find no error which could be said to have affirmatively affected the result of the trial. See Code, Section 10654. There is no merit in the assignments as to the trial Judge's rulings on exceptions to testimony.

It results that all the assignments of error are overruled and the judgments of the Circuit Court are affirmed.

Judgments will be entered here in favor of Robert Wayne Smith and against the defendant Dainey Deaderick for the sum of $2,750 and interest from March 9, 1949 and in favor of Albert L. Smith and against the defendant Dainey Deaderick for the sum of $2,750 and interest from March 9, 1949 and the costs of the cases.

Affirmed.

Felts and Hickerson, JJ., concur.