# (BLUE) STAR SERVICE, INC. et al. v. McCURDY.
## —251 S. W. (2d) 139.

Western Division at Jackson. February 6, 1952.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

2

4

Martin & Tate, of Memphis, for plaintiffs-in-error.

Wm. L. Allan, and Ewing, Laughlin & Watson, all of Memphis, for defendant-in-error.

SWEPSTON, J. Norman S. McCurdy sued the defendant parking lot operators and their agent in charge for damages for "wrongfully and illegally procuring the arrest of plaintiff by Memphis police officers".

There was a jury verdict for $3500, which on motion of defendant for a new trial was reduced by suggestion of remittitur to $2500.

Defendants have appealed and assigned error both as to liability and the amount of the judgment.

Plaintiff has appealed and assigned error as to the suggested remittitur.

Before treating the assignments of error the following facts are not contradicted.

Plaintiff was in arrears by two payments with the C. I. T., a finance company, holding the paper on his automobile. He agreed to give possession of same until he could catch up the payments. On January 5, 1951

two employees of C. I. T. came to his home in a subdivision outside the city of Memphis near Oakville, drove the car into the city and parked the same with defendant company at night time, where C. I. T. had an arrangement for parking repossessed cars. Next morning the parking lot issued its claim check for same to C. I. T. and placed the car keys on a board in the parking lot office.

January 9 plaintiff paid C. I. T., was given a receipt and the claim check to the car. C. I. T. informed the defendants the same morning that plaintiff was entitled to possession of the car.

The evidence is in conflict as to the exact time of day plaintiff obtained his car from the lot, plaintiff testifying it was the same morning, that he paid a colored boy $1.50 and gave him the claim check before he drove away, while defendants deny any knowledge of when or how he obtained it, testifying they have no record of the $1.50 or the claim check, and that plaintiff did not deal with any of the employees of the lot, but admitted they no longer had the car key.

This, however, was for the jury to resolve.

In any event defendant Simmons discovered on January 10 that the car was no longer on the lot and having no clearance of it on his records, he inquired of the other two employes and of C. I. T., after which he called the Police Department Auto Theft Bureau and reported the car had been stolen, R. 15, 68, 88. Defendant's agent Simmons stated at the time to the police he did not know whether plaintiff had "come and got the car or not", R. 69 but that he had paid the C. I. T. and was entitled to possession upon payment of storage and delivery of the claim check. The police told Simmons to "check and see if anyone on the lot or in the firm had come down and got the car, before we send a squad car down; to

verify the fact that it was a stolen automobile''. R. 69, 94. Pursuant to those instructions Simmons telephoned C. I. T. and obtained the mailing address which proved to be a rural route, and learned that plaintiff had no telephone, but he did not inquire of C. I. T. how to get to that address and did not send anyone or go to plaintiff's home.

Simmons reported back to the police that he had made the investigation and that the car had been stolen. R. 95.

Simmons did not state who had stolen it and did not directly request the arrest of anybody, but when he reported it to police as a stolen car, he knew they would ''pick up whoever they found in it''.

January 11 about 2:30 P.M. the police spotted the car at Trigg and Florida streets in an industrial section of south Memphis, forced it to the curb, arrested and handcuffed the driver, who proved to be plaintiff, at pistol point, put him in a squad car and took him to jail and ''frisked'' him. About 4:00 P.M. they took him to the lot of defendants where he established his innocence. Whereupon plaintiff being violently angry cursed the police copiously and accused them of stealing his money. The police took him back to jail and held him until the next morning, during which time he was finger-printed and photographed. He was given his money and other personal property.

The defense is that defendant did not procure the arrest but if so, the same was justified

(1) because plaintiff took the car from said lot without paying storage charges, or presenting claim check, or signing a release for the car,

(2) that it was done to protect all parties and

(3) a reasonable and prudent investigation before informing the police.

■ The first assignment of error is the failure of the court to give a peremptory instruction for defendants at the close of plaintiff's proof.

This assignment is overruled, because defendant introduced evidence after the motion was overruled, which is a waiver of the right to complain.

The second assignment is the failure to give a peremptory instruction for defendants at the close of all the proof.

The solution to this depends upon whether the legal theory of the plaintiff or that of the defendant is applicable to the evidence.

The theory of plaintiff is embodied in the excerpt from the charge of the court quoted in defendants' sixth assignment as follows:

"* * * if a person wrongfully, or without proper investigation, sets in motion by his act or words the machinery from which another is wronged, that person who does so, is equally answerable with the person who commits the wrong. If it appears that before setting in motion, machinery which results in the arrest of the plaintiff, the defendant endeavored to exercise reasonable diligence to make such inquiry and investigation of facts touching the probability of theft or disappearance of the automobile as an ordinarily prudent person would have made under the same circumstances, then the defendant would not be liable for setting such machinery in motion." (R. 135).

The theory of defendant is embodied in the special request of defendant quoted in his third assignment, which request the court refused, as follows:

"Gentlemen of the Jury, it is the theory of the Defendants that a person is not liable in damages

for false arrests or imprisonment where he merely reports to the police officials the facts and circumstances which give rise to his belief that a theft has been committed and does not accuse any specific individual of the theft and does not direct or request, either expressly or impliedly, that any person be arrested. If you find from the facts that neither the defendant Simmons, nor any one employed by the (Blue) Star Service Company, Inc., accused McCurdy of having stolen the Packard car in question, and did not request or direct, either expressly or impliedly, that Mr. McCurdy be arrested, then you must bring in a verdict in favor of both of the defendants." (R. 140).

In view of defendant Simmons' testimony that when he first telephoned the police he was told by them to make an investigation before the police acted; that he then obtained the mailing address of plaintiff but made no effort to learn how to contact plaintiff otherwise; that he then reported the car as stolen and knew that the police would pick up whomever was found in possession of it; and the further fact that the evidence is silent as to his having given the police a description of the plaintiff or taken any precaution to avoid their arresting plaintiff if he should be found in possession, we think it was for the jury to say whether he wrongfully procured the arrest of plaintiff by his failure to exercise reasonable care in investigating the facts before finally reporting the car as having been stolen without taking any precautions to prevent the arrest of plaintiff in the event he should be found by the police to be in possession of the car. We do not think the evidence is undisputed, as insisted by defendants, that Simmons made such a full investigation as a reasonably prudent person would

have made, nor that he otherwise took such precautions against the probability of the plaintiff's arrest, if found in possession.

We are of the opinion, however that Simmons' testimony shows as a matter of law, he procured the arrest of plaintiff by the police, as we shall try to demonstrate.

In Restatement of the Law, Torts, Section 35, False Imprisonment it is said:

"(1) An act, which directly or indirectly, is a legal cause of a confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other irrespective of whether harm is caused to any legally protected interest of the other, if (a) the act is intended so to confine the other or a third person, and (b) the other is conscious of the confinement, and (c) the confinement is not consented to by the other, and (d) the confinement is not otherwise privileged."

Section 43:

"If an act done with the intention of affecting a third person in the manner stated in Sec. 35, imposes a confinement upon another, the actor is liable to such other as fully as though it were intended so to affect him."

The evidence compels the finding that there would have been no arrest but for the report of a stolen car and that defendant knew that anyone found in possession would be arrested or detained by reason of the report, if found in possession. So it matters not whether defendant intended or not that plaintiff be arrested, because he intended or knew that somebody would be arrested, if found in the car.

Under these circumstances defendant owed the duty of reasonable care in making a stolen car report.

In Mouse v. Central Sav. & Tr. Co., 1929, 120 Ohio St. 599, 167 N. E. 868, a bank mistakenly refused payment of a depositor's check payable to a third party, who, after investigation at the bank where he was assured by the bank that the drawer had no account, swore out a warrant for the drawer who was arrested and jailed.

Held, in the suit by the depositor, error to direct a verdict in favor of the bank on the ground the action of the bank was not the proximate cause of the arrest; that the bank by the exercise of reasonable diligence should have foreseen the probability of the arrest.

██ It, therefore, matters not whether defendant directly ordered the arrest, if he set in motion the machinery which proximately caused the arrest; that is, if the arrest was not the act of the officer or other person making the arrest on his own volition.

In Eichengreen v. Louisville & N. R. R., 96 Tenn. 229, 239, 240, 34 S. W. 219, 220, 31 L. R. A. 702, the railroad detective sent a telegram to the telegraph operator at Gallatin reading:

"Tell your police authorities to meet me at the depot. A man on train with counterfeit money going to get off at your station. Tried to pass $5 of it at Bowling Green. [Signed] W. J. Stewart".

The trial court instructed the jury:

"If Stewart simply telegraphed the operator to notify the police that a man was on the train who had passed or attempted to pass counterfeit money, then that would not authorize the police to arrest him, unless he was directed to do so by an agent who had authority to act in such a matter".

On appeal it was held this instruction was misleading in that it did not give the entire import of the telegram, because there was evidence to show that upon arrival

the plaintiff was identified by Stewart; that, furthermore, the instruction was erroneous in that liability is made to depend on the order of Stewart, whereas there would be liability "if the agent procured the arrest, or set in motion the machinery by which the arrest was made, although not expressly ordering or directing it".

Defendant relies upon the rule stated in Hertzka v. Ellison, 8 Tenn. App. 667, 674; "One cannot be held liable for false imprisonment where he merely informed an officer of circumstances which had aroused his suspicions but made no request or suggestion that the suspected person be arrested, and the officer, of his own volition, made an arrest," citing cases; also upon other cases to the same effect.

We have no quarrel with the rule and do not find it necessary to discuss these cases, but disagree with counsel as to the application of same to the evidence in this case.

In the Hertzka case it is stated that what is a direction or request sufficient to impose liability depends upon the facts of each case, and same may be inferred from circumstances as well as established by direct proof, nor need the party directing the arrest be present at the time of the arrest.

It appears from the cases cited in the Hertzka case as well as in many others, that if the evidence shows the officer acted on his own volition, the informer is not liable, but if he acted under the direct or indirect request of the informer the latter will be held liable; and where the evidence is in dispute, it is for the jury.

See Zinkfein v. W. T. Grant Co., 236 Mass. 228, 128 N. E. 24; Bisgaard v. Duvall, 169 Iowa 711, 151 N. W. 1051; Vernes v. Phillips, 266 N. Y. 298, 194 N. E. 762.

See also, Matthews v. Southern Ry. System, 1945, 81 U. S. App. D. C. 263, 157 F. (2d) 609, 611.

However, as stated above this was not a jury question here.

■ As to the duty to exercise care before procuring an arrest, in Travis v. Bacherig, 7 Tenn. App. 638, 645, Travis, apparently a private citizen, and a policeman arrested an innocent young lady without a warrant on suspicion of burglary and shortly thereafter released her without prosecution, for which Travis was held liable by the jury for damages for false imprisonment, this Court said:

"In an action for false imprisonment or malicious prosecution the verdict should be directed for the defendant only when it appears from undisputed evidence, that, before procuring the arrest and prosecution of plaintiff, the defendant endeavored, by the exercise of reasonable diligence, to make such inquiry and investigation of the facts touching the probable guilt of the plaintiff as an ordinarily prudent person would have made under the same circumstances. See Citty v. Miller, 1 Tenn. App. 1. * * * ."

■ We therefore are of the opinion that the trial Judge correctly instructed the jury in the above charge quoted and that he properly refused the charge requested by defendant as being inapplicable to the undisputed evidence as to what investigation defendant made.

We therefore overrule assignments 2, 3, 5, 6, 7, 8, 9, 10, 11, and 12, which are all covered by what has been said above.

Assignment 4 complains of the failure of the court to charge that the damages must be the proximate result of defendants' actions.

We think this was covered by the general charge on proximate cause; R. 140.

The remaining assignments are that the verdict is excessive and so excessive as to indicate passion, prejudice, or unaccountable caprice and that the proof does not support the amount of the verdict.

It is suggested that the jury was prejudiced by the mistreatment of plaintiff by the police after he had established his innocence and defendants no longer desired him to be restrained of his liberty.

 We do not think so; the record shows the trial judge instructed the jury that defendant was not responsible for the action of the police after that time. The amount awarded is not out of line with amounts awarded in similar cases; damages in a case of this kind are peculiarly a question for the jury, as there is no exact method of calculating same in money. Deaderick v. Smith, 33 Tenn. App. 151, 230 S. W. (2d) 406; Travis v. Bacherig, supra.

 Also, "There is added weight to the judgment of the trial court, when, as here, the Circuit Court, by way of remittitur, reduced the amount of damages fixed by the jury". Ezell v. Sign Post Co. Inc., 30 Tenn. App. 256, 205 S. W. (2d) 13; Smith v. Sloan, 189 Tenn. 368, 377, 225 S. W. (2d) 539, 227 S. W. (2d) 2.

For the same reason we do not think the amount of the original verdict should be restored, as sought by plaintiff's appeal.

Judgment will be entered here for $2500 with interest from July 2, 1951 and costs of appeal divided equally.

Anderson, P. J., and Baptist, J., concur.