# W. H. ERNST v. A. M. BENNETT.—273 S. W. (2d) 492.

Middle Section.   July 30, 1954.

Petition for Certiorari denied by Supreme Court, December 17, 1954.

272

Stokes & Trimble, of Nashville, for plaintiff in error.

H. Frank Taylor, John M. Lynch, and Louis G. La-Vecchia, all of Nashville, for defendant in error.

FELTS, J. This was an action by Bennett against W. H. Ernst and others for damages for malicious prosecution. This is the second appeal in error. On the former appeal this Court held that the evidence was sufficient to make a case for the jury against W. H. Ernst and remanded the case for a new trial as to him. A. M. Bennett v. B. Walter Ernst et al., opinion filed Jan. 16, 1953, unreported, no certiorari sought.

On the second trial there was a verdict and judgment in favor of plaintiff, A. M. Bennett, against defendant, W. H. Ernst, for $7,500 and the costs.

Defendant appealed in error and insists that there was no evidence to support the verdict, and that the evidence established, without contradiction, the defense of advice of counsel, which was a complete bar to the action.

In our former opinion we detailed the facts which the evidence on the first trial tended to prove. The evidence on the second trial was not materially different from that on the first trial. We need not again set forth the facts at length. For a detailed statement of them we refer to that opinion.

The prosecution sued for grew out of a controversy over the control of the F. L. Estes Saw & Machine Company, a corporation. That corporation had been owned and controlled by F. L. Estes and his son Howard Estes for many years. On the death of F. L. Estes the control was acquired by B. Walter Ernst and his son, defendant W. H. Ernst, and trouble developed between them on the one side and Howard Estes, minority stockholder, on the other.

Howard Estes, in September, 1947, organized a new and competing corporation under the name of Howard Estes Saw & Machine Company, and took with him all of the employees of the old concern, including plaintiff Bennett. Defendant W. H. Ernst and his father tried to persuade plaintiff Bennett to come back to work for their company, but he refused.

Then there followed some litigation in the Chancery Court between the two rival concerns and their stockholders. Also, there were some actions of replevin brought by the old concern against the new Company, or its stockholders, or some of its employees, to recover possession of a lot of tools and equipment, which belonged to the employees and had been taken with them to the new concern in September, 1947.

About fourteen months after these tools had been taken by the employees to the new concern and after the replevin suits for the tools had been decided in favor of these employees and against the old company, one of the company's officers, defendant W. H. Ernst, went before the General Sessions Court of Davidson County, on November 16, 1948, and made an affidavit charging that plaintiff Bennett had been guilty of two felonies—larceny of the tools and receiving and concealing stolen tools.

Upon this affidavit defendant W. H. Ernst procured the General Sessions Court to issue a criminal warrant for the arrest of Bennett upon charges of these two felonies. Defendant then had the warrant delivered to Sergeant Cathey and another officer by the name of Deeds, of the Belle Meade Police; and these officers, accompanied by defendant Ernst and Ralph Wilson, went to the home of plaintiff about nine o'clock at night, entered his house, arrested him, searched his premises, and

took him out in South Nashville to the Plant of the Ernst Cereal Company.

On reaching this Plant all of them except Deeds, who held plaintiff in the automobile, went into the Plant and remained there a while. Then Sergeant Cathey returned to the car and he and the other officer took plaintiff to the court house, where he was held in custody until he was able that night, without a preliminary hearing, to give bond to appear and answer these felony charges in the Criminal Court.

An indictment was later prepared, based on this warrant, charging plaintiff with larceny of a quantity of tools of a value of $1,500, the property of the F. L. Estes Saw & Machine Company, and also charging him with feloniously receiving and concealing said stolen tools. The defendant W. H. Ernst, went before the Grand Jury and testified, these charges were presented to the Grand Jury, but they refused to indict plaintiff and returned a ''No True Bill'' on November 24, 1948, and plaintiff was discharged, and the prosecution thus ended.

Plaintiff had lived in Nashville for 25 years, was a man of good character, and had never been arrested or charged with any offense. The tools had been taken by the employees fourteen months before, under a claim of ownership, which claim had been sustained in the replevin suits, where it was determined that said tools did not belong to the F. L. Estes Saw & Machine Company. Such were the circumstances under which defendant Ernst started the prosecution.

On the former appeal we held that these facts and circumstances made a case for the jury and that the jury could reasonably find from the evidence that defendant had brought the prosecution against plaintiff without

probable cause, and with malice, and was liable in damages therefor. That holding is now the law of this case, the facts being substantially the same on the second trial. Life & Casualty Ins. Co. v. Jett, 175 Tenn. 295, 133 S. W. (2d) 997; National Life & Accident Ins. Co. v. Morrison, 179 Tenn. 29, 162 S. W. (2d) 501.

We also held that the defense of advice of counsel was in the nature of an affirmative defense, and the burden of proof was upon defendant to make out that defense. That holding is also binding and controlling as the law of this case. In respect of the defense of advice of counsel, we said:

"To make out that defense, he had to prove that he sought such advice in good faith, that he fully disclosed to his counsel all the material facts he knew or should have known by reasonable diligence, that counsel advised there was cause to prosecute, and that he acted in good faith upon such advice. Thompson v. Schulz, supra, 34 Tenn. App. [488], 496, 240 S. W. (2d) [252], 256, and authorities there cited; Schnathorst v. Williams, supra [240 Iowa 561, 36 N. W. (2d) 739], 10 A. L. R. (2d) 1211-1212. Annotation, 10 A. L. R. (2d) 1215, 1272."

On the former trial the evidence offered on this defense was that of Mr. Ralph Wilson, who said that he had advised the bringing of the prosecution. He was a young student who had stood the Bar examination and been licensed to practice in Tennessee but was going to Vanderbilt Law School and working part time at the Ernst Cereal Plant as a bookkeeper and tax auditor.

He was impeached as a witness by his cross-examination which developed material inconsistencies and contradictions in his testimony sufficient to involve his

credibility as a witness and to make it a matter for the jury to determine how much of his testimony they would accept and how much they should reject, some of the material contradictions being pointed out in our former opinion.

On the second trial the testimony of this witness was subject to the same infirmities. He introduced an affidavit he had taken from an employee named Hamm, as supporting his conclusion that plaintiff was guilty of larceny of the tools and of feloniously receiving and concealing such stolen tools.

A reading of this affidavit discloses that it did not charge plaintiff with larceny or receiving stolen tools, and it afforded no ground whatever for any opinion or conclusion that he was guilty of either of such felonies. The witness Wilson said that the replevin actions for the tools had been decided against the F. L. Estes Saw & Machine Company, "and I felt like under all the circumstances here that larceny would be our best bet on it."

This witness claimed to be acting in the double role of an agent investigating the facts for defendant and also as an attorney giving him legal advice to bring the prosecution. In such case he owed the same duty as the client to use reasonable diligence and make proper investigation before advising a criminal prosecution, and he was chargeable with knowledge of all the facts he could have learned by such diligence and investigation, and his client was likewise chargeable. Thompson v. Schulz, 34 Tenn. App. 488, 497, 240 S. W. (2d) 252, 256, and cases there cited.

We think the questions of whether the witness Wilson exercised reasonable diligence and made proper investigation, and of whether he in good faith advised

defendant to bring the prosecution, were questions of fact for the jury and their verdict indicates that they found against defendant on such issues.

Defendant Ernst testified generally that the witness Wilson was his attorney and both of them made investigation extending over a year or two, and that he brought the prosecution on the advice of counsel.

■ ■ We think the cross-examination of this witness developed such material inconsistencies and contradictions in his testimony that his credibility as a witness was for the jury, and that the jury could well have found that he did not bring the prosecution on advice of counsel, in good faith, and for the purpose of bringing to justice an offender whom he thought to be guilty. Indeed, he testified that he never ''came to a conclusion that he [plaintiff] stole the tools.''

■ So we conclude that there was ample evidence to support the verdict of the jury and that the jury could well find, as their verdict indicates they did find, that the defense of advice of counsel was not made out.

This brings us to defendant's contention that the verdict of the jury is so excessive as to indicate passion, prejudice, or caprice on the part of the jury, and that this Court should reverse and remand the cause for a new trial on this account.

In this case the jury could reasonably find that after the replevin actions for the tools had been litigated and determined against F. L. Estes Saw & Machine Company, one of its officers, defendant W. H. Ernst, then resorted to the criminal court either to gain some advantage in the controversy that had been lost in the civil court or for some other wrongful and malicious purpose.

In so doing he brought two charges of felony against plaintiff, caused his home to be entered at night, and

plaintiff to be arrested and held in custody to answer these grave and serious charges, and tried to have him indicted by the Grand Jury.

■ Such charges were libelous *per se* and this prosecution tended to fix upon plaintiff "the stigma of dishonor much more effectually than the spoken word or the printed libel." Street, Foundations of Legal Liability, Vol. 1, p. 326. For the great wrong thus done him, plaintiff was entitled to be compensated so far as money may do so.

■ We think, however, that the verdict is excessive and somewhat above the limits of the amounts usually allowed in more or less similar cases; and that it ought to be reduced by $3,000, or to $4,500, by way of remittitur. Cf. Deaderick v. Smith, 33 Tenn. App. 151, 230 S. W. (2d) 406 (verdicts for $5,500); Streetman v. Richardson, Tenn. App., 266 S. W. (2d) 838 (verdict for $7,500 reduced to $3,000).

We therefore suggest a remittitur of $3,000 to reduce the judgment to $4,500. If this remittitur is accepted by plaintiff within twenty days of this date, the judgment of the Circuit Court will be affirmed to the extent indicated and judgment will be entered here for plaintiff for $4,500 and all the costs of the cause. If the remittitur is not accepted within that time, then the judgment will be reversed and the case remanded to the Circuit Court for a new trial, with costs to abide the outcome.

Howell and Hickerson, JJ., concur.