Kenneth B. SCHOEN, Plaintiff-Appellee,

v.

J.C. BRADFORD & COMPANY, et al.,
Defendants-Appellants.

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

June 22, 1982.

Permission to Appeal
Denied by Supreme Court
Nov. 22, 1982.

OPINION

TODD, Presiding Judge.

This appeal involves the prolonged litigation initiated by plaintiff on May 14, 1971, to recover the value of his interest in a partnership. A former, interlocutory appeal was decided by this Court on April 27, 1973. Upon remand, there was a reference to a Special Master who reported that plaintiff should have judgment for $620,-478.46, for the value of the plaintiff's interest and profits thereon to and including December 31, 1980. The Chancellor confirmed and rendered final judgment accordingly, reserving the ascertainment of plaintiff's share in profits from January 1, 1981, to the date of payment of the value of plaintiff's share in the partnership.

Defendants have appealed and proposed seven issues for consideration of which a brief recital of the background and history of the case is necessary.

For about twenty-five years prior to the inception of this controversy, plaintiff was associated with J.C. Bradford & Co., a partnership, as an employee or partner. During the last five years of such association, plaintiff was a partner. The partnership agreement in effect at the time of plaintiff's withdrawal was executed on April 1, 1970. The agreement provided that a partner might be required to withdraw on 24 hours notice from J.C. Bradford.

On October 2, 1970, plaintiff was required to withdraw under the provision just mentioned.

At the time of his withdrawal, plaintiff was the owner of a 3.69% interest in the partnership and was also the owner of 369 shares of Class B capital stock of J.C. Bradford & Co., Inc., an affiliated corporation. These shares were held in the name of the partnership to be used as collateral, but were actually owned by plaintiff.

The partnership agreement required that plaintiff be paid the value of his interest in the partnership within 90 days of withdrawal.

The partnership reported to plaintiff that his interest was valueless and declined to pay him anything. This suit ensued.

Gullett, Sanford & Robinson by Joel M. Leeman, Nashville, for plaintiff-appellee.

Waller, Lansden, Dortch & Davis by D.L. Lansden, Nashville, for defendants-appellants.

After a trial, the Chancellor determined as follows:

1. Plaintiff was entitled to 3.69% of the book value of the partnership as of December 31, 1970.

2. Plaintiff was entitled to an additional amount representing the amount by which the "going concern value" exceeded the book value.

3. Plaintiff was entitled to that share of the profits since withdrawal which is attributable to the use of his share of the assets.

4. Plaintiff was entitled to $37,526.36 as the value of his 369 shares in J.C. Bradford & Co., Inc.

Upon appeal, this Court released its opinion on April 27, 1973, reciting the following:

1. Plaintiff was excluded from the partnership on October 2, 1970, by the managing partner under his powers set out in the Partnership Agreement.

2. Plaintiff was and is entitled to 3.69% of the net assets of the partnership *in kind,* or 3.69% of the value of the net assets at market value.

3. Under the Partnership Agreement the remaining partners were allowed 90 days within which to make settlement.

4. Under the Agreement plaintiff had no interest in name or good-will, which belonged to J.C. Bradford, individually.

5. The market value of the assets of the partnership should be established as "going concern value," that is, the value of the assets "in place," "assembled," for use by a going concern, and not as separate items.

6. Plaintiff is *not* entitled to any enhancement of the market value of the assets because of the anticipation of patronage since this is comprehended in "good will".

7. Plaintiff is *not* entitled to interest or profits on his interest between October 2, 1970 and January 2, 1971, the period allowed by the partnership contract for settlement. *60 Am.Jur.2d, Partnership, 289.*

8. We concur in the Chancellor's finding that the records kept and statements produced by defendant do not accurately reflect the market "going concern" value of the assets on October 2, 1970.

9. Defendant was not entitled to demand contribution from plaintiff for any deficiency in assets without a liquidation since the contract does not so provide.

10. In arriving at the value of the Partnership assets for purposes of settlement, if better evidence is not offered, the value of assets on October 2, 1970 may be estimated by beginning with the book value as shown on December 31, 1970, and adjusting same to conform reasonably with changes in value between October 2nd and December 31, 1970.

11. Upon ascertainment of the value of plaintiff's interest on October 2, 1970, plaintiff is entitled to profits attributable to the presence of his interest in the partnership from January 2, 1971, until he is paid or tendered the bona fide value of such share.

12. The profits attributable to such assets will *not* include profits attributable to the personal services of partners, since plaintiff's personal service ceased on October 2, 1970.

13. The value of plaintiff's interest will be first ascertained and paid to him. *Afterward* the profits attributable to such interest will be ascertained from January 2, 1971, (expiration of time allowed for settlement under the Agreement) to the date of payment.

14. The shares of J.C. Bradford & Co. stock owned by plaintiff have apparently been retained and used by the partnership. Plaintiff is entitled to the profits attributable to the use of such stock by the partnership from January 2, 1971 to the date of payment to plaintiff of the value of said stock.

15. A reference to the Clerk and Master was affirmed, with the following instructions and subject to such additional terms as the Chancellor may see fit to make on remand.

The Master will ascertain and report:

(a) The "going concern value of plaintiff's interest in the assets of the partner-

ship, as above defined, authorizing the use of the December 31, 1970 balance sheet as a point of beginning to "work back" to October 2, 1970 by suitable adjustments.

(b) The value of plaintiff's interest in J.C. Bradford & Co., Inc., stock, including profits attributable thereto.

(c) The profits made upon plaintiff's part of the assets (excluding profits from personal services) from January 2, 1971 to date of payment under (a) above.

On remand, the Chancellor entered an order of reference in the following terms:

ORDERED, ADJUDGED AND DE-CREED by the Court that this cause is referred to F. Clay Bailey, Jr. who is hereby appointed a Special Master of this Court to ascertain and report pursuant to Rule 53 of the Tennessee Rules of Civil Procedure:

(a) The value of plaintiff's interest in the partnership, valued in conformity with the partnership agreement, as construed and applied by the Court of Appeals in its original opinion as modified by its opinion in response to petitions to rehear.

(b) The amount to which plaintiff is entitled, if any, as profits attributable to the value of plaintiff's interest in J.C. Bradford & Co., Incorporated.

(c) The profits made upon plaintiff's part of the assets (excluding profits from personal services) from January 2, 1971 to date of payment.

In executing the aforesaid reference, the Special Master may consider the entire record in this cause and any additional proof which is offered by either of the parties hereto. The Special Master may report in the alternative on controverted issues, and specifically shall report, in addition to his findings of fact and conclusions of law as to whether or not the stock exchange memberships are readily marketable securities, both the cost of stock exchange memberships and the net sums at which they could be sold in the open market for such memberships on October 2, 1970.

Thereafter, the Special Master filed the following report:

The going concern value of J.C. Bradford Co. less the good will in said name is Eight Hundred Fifty Two Thousand Three Hundred Fifty Dollars and no/100 ($852,350.00) and the value of the plaintiff's interest therein is Thirty One Thousand Four Hundred Fifty One Dollars and 71/100 ($31,451.71). The other matters in the reference are reserved.

Thereafter, the Special Master filed the following report:

1. The Plaintiff was paid the value of his stock in J.C. Bradford & Co., Inc. in July, 1973. The only evidence in the record of the profits attributable to his interest in the corporation were provided by the Defendant (see deposition of Mr. Ray Harness, dated August 7, 1980, and Exhibit 1 thereto). Based on this evidence, the total sum due the Plaintiff as his share of the profits in said corporation for the years 1971 thru July of 1973 is $6,669.00.

2. The total net profit of the Defendant J.C. Bradford & Co., Inc., less the amount thereof attributable to the personal services of the partners for the years 1971 thru 1979 is $11,312,911.00. The Plaintiff is due his 3.69% therein or $417,446.42. In addition, the Plaintiff is due his interest in the net profits of the Defendant less the portion thereof attributable to the services of the remaining partners from December 31, 1979, until he is paid the value of his interest in the Defendant partnership as of October 7, 1970, said amounts being $31,451.71 as previously reported to the Court by the Special Master.

Thereafter, the Chancellor entered his "order and judgment":

... having considered the arguments and Briefs of counsel, the Final Report of the Special Master and the Interim Reports previously filed by the Special Master, and the entire record in this cause, This Court issued a Memorandum Opinion, dated October 30, 1981, which Memorandum is incorporated herein by reference.

As set forth in that Memorandum, it is ORDERED that the Final Report of the Special Master be, and hereby is confirmed and adopted by this Court and the exceptions to that Report are hereby overruled.

Based upon the findings of the Special Master in his Final Report and his Interim Reports and this Court's confirmation and adoption of all such Reports, it is, hereby, ORDERED that Judgment be, and hereby is entered in favor of the Plaintiff Kenneth B. Schoen and against the Defendants, J.C. Bradford & Co. and the partners of that partnership, jointly and severally, in the amount of Six Hundred Twenty Thousand Four Hundred Seventy-Eight and 46/100 Dollars (620,-478.46). Said judgment is composed of the following elements of damages which the Court expressly finds to correct:

(a) The amount of Thirty-One Thousand Four Hundred Fifty-One and 71/100 Dollars ($31,451.71) which the Court finds to be the "going concern value" of the Plaintiff's interest in the assets of the Defendant partnership as of October 2, 1970;

(b) The amount of Five Hundred Eighty-Two Thousand Three Hundred Fifty-Seven and 75/100 Dollars ($582,-357.75) which the Court finds to be to the profits attributable to the use of Plaintiff's right in the property of the partnership (excluding profits from personal services) from January 2, 1971 through and including December 31, 1980;

(c) The amount of Six Thousand Six Hundred Sixty-Nine and 00/100 Dollars ($6,669.00) which the Court finds to be the amount of profit attributable to the value of the Plaintiff's stock in J.C. Bradford & Co., Inc. from January 2, 1971 through July, 1973 when he was paid the value of that stock.

. . . .

The determination of the entitlement of the Plaintiff to profits from the Defendant partnership realized after January 1, 1981 is expressly reserved for determination upon the Plaintiff's being paid the value of his interest in the De-

fendant partnership as of the date of his withdrawal and upon the availability of sufficient information regarding the profits of the Defendant partnership for Calendar Year 1981 to permit computation of the Plaintiff's share of those profits.

The costs of this cause are adjudged against the Defendants, for which let execution issue, if necessary. As part of those costs, the Court awards to Honorable F. Clay Bailey, Jr., Special Master, a fee of Twenty-Four Thousand Eight Hundred Sixty-Two and 00/100 Dollars ($24,862.00) and expenses of One Thousand Eight Hundred and 00/100 Dollars ($1,800.00), which fee and expenses the Court expressly finds to be reasonable.

Two aspects of this proceeding limit the area of inquiry on this appeal.

1. The pronouncements of this Court on the previous appeal have become "the law of the case", and there is no occasion to reexamine the correctness of said pronouncements at this time. *National Life & Acc. Ins. Co. v. Morrison,* 179 Tenn. 29, 162 S.W.2d 501 (1942). *Ernst v. Bennett,* 38 Tenn.App. 271, 273 S.W.2d 492 (1954).

■ 2. The concurrent findings of the Master and Chancellor are not to be disturbed by this Court on appeal, unless (1) it was upon an issue not proper to be referred, or (2) it was based upon an error of law or a mixed question of fact and law, or (3) where it was not supported by any material evidence. T.C.A. § 27–1–113; *Staggs v. Herff Motor Co.,* 216 Tenn. 113, 390 S.W.2d 245 (1965); *Hopkins v. First Tenn. Nat. Bk.,* Tenn.App.1977, 560 S.W.2d 916. *Ferrell v. Elrod,* 63 Tenn.App. 129, 469 S.W.2d 678 (1971).

■ A joint finding by the Chancellor and Master have the same force and effect as a verdict of a jury approved by the trial judge. *Ferrell v. Elrod, supra.*

The first issue presented by appellants is as follows:

Under a partnership agreement providing that a withdrawing partner's interest

in the firm shall cease as of the date of withdrawal, is a partner withdrawing at the end of the third quarter on October 2, entitled to share in three-fourths of the profits for the entire year, even though the firm had a loss for the first three quarters but the profits for the last quarter exceeded the amount of the loss for the first three quarters?

Appellants misconstrue the finding of the Master. His report contains the following explanation:

The law and equities of this litigation as propounded by the Court of Appeals can most nearly be met by considering what value a reasonable person would place on J.C. Bradford Co. as of October 2, 1970, absent the name, but with the knowledge of its prior periodic net worth figures and the foreknowledge of its net worth on December 31, 1970. It is the potential as of October 2nd to maintain or increase a particular net worth over an extended period of time and not the actual net worth on this date which is involved here. Obviously the market value of J.C. Bradford Co. based on its record of earnings would be significantly more than a value estimate based on its net worth, record and potential.

■ It is well known that the value of property, particularly investments, is largely influenced by its potential to increase in value or to produce profits. A purchaser of such property would be willing to pay a much larger price for property which he expects to increase in value or produce profits.

The unsoundness of appellants' opinion is best illustrated by posing the question of whether any other member of the partnership would have given the slightest consideration to the sale of his interest without including the element of future increase in value and profits.

Appellants' first issue is without merit.

Appellants' second issue is as follows:

If Question 1 is answered in the negative, is the partner entitled to the same amount as if said question had been answered in the affirmative, but on the theory that this amount represented a share in the "going concern value" of the firm (described as including the good-will of the firm, other than that inherent in its name) although no such asset was carried on the books of the firm and although the partnership agreement provided that the name and good-will of the firm belonged exclusively to the founding partner?

Appellants' complain of the following paragraph from the Report of the Master:

The only reason for the exclusion of the good will inherent in the name J.C. Bradford from the valuation of the defendant partnership as a going concern is the provision in the partnership agreement that the name is reserved to J.C. Bradford individually. Construing this provision in the partnership agreement against the draftsman thereof, the good will excluded from going concern value is the partnership name only and not the good will attendant to the various account executives individually.

Appellants insist that consideration of "good will attendant to the various account executives individually" is a violation of the previous pronouncement of this Court as follows:

Plaintiff is *not* entitled to any enhancement of the market value of the assets because of the anticipation of patronage since this is comprehended in 'good will'."

The former opinion of this Court states:

4. Under the Agreement plaintiff had no interest in name or good-will, which belonged to J.C. Bradford individually. (TR 20)

5. The market value of the assets of the partnership should be established as "going concern value," that is, the value of the assets "in place," "assembled," for use by a going concern, and not as separate items.

6. Plaintiff is *not* entitled to any enhancement of the market value of the assets because of the anticipation of patronage since this is comprehended in "good will".

The former opinion of this Court in response to a petition to rehear states:

Plaintiff-appellee insists that the opinion be modified to provide that "going concern value means real value ... determined according to principles of evaluation and Tennessee partnership law." This position ignores the fact that the subject concern was not an ordinary partnership, but was governed by a special and unique partnership agreement. Plaintiff-appellee also ignores the distinction between the "going concern" value of a *business* as a whole and the "going concern" value of the *physical assets* of a business independent of its intangible assets of name, good-will and expectation of patronage. It is the latter, and not the former, which was specified with particularity in the opinion of this Court.

The opinions of this Court did deal with particularity with the specifics of good will attributable to the firm name and the individual name, J.C. Bradford. The opinions did not deal specifically with the matter of good will attributable to the various other partners and employees of the firm. However, the former opinion did refer to the "going concern" value of a business as a whole and the "going concern" value of the physical assets of a business independent of its intangible assets of name, good will and expectation of patronage.

The sale of a business can be accomplished under three general plans:

1. The business may be sold as a complete unit, name, assets, management and personnel, so that its operation would continue without perceptable change.

2. The name and ownership may be changed, but all operating personnel will be available to the purchaser.

3. The purchaser buys only merchandise and equipment; all management and operating personnel are discharged and the new owner undertakes to open up under a new name with new personnel.

■ Plan No. 2, above, was the plan contemplated by this Court in its former decision and is the fairest and most just basis for fixing the value of the assets of the business "in place", "as a going concern." That is, the value of the business should have been fixed as though the names, J.C. Bradford and J.C. Bradford & Co., would not be available to the purchaser but that other personnel of the firm would be available to the purchaser as needed, required, and willing.

■ The "going concern value" of a firm does not include good will. However, it does include the value inherent in the assemblage of an ongoing profitable enterprise. *Los Angeles Gas & Electric Corp. v. Railroad Comm.*, 289 U.S. 287, 53 S.Ct. 637, 77 L.Ed. 1180 (1933).

■ The Master's unfortunate use of the words "good will" in connection with account executives does not invalidate his findings, because the going concern value of the assets of the subject concern was properly established partially on the basis that the assets would continue to be utilized by existing experienced personnel of J.C. Bradford & Co.

The finding of the Master was not inconsistent with the previous holdings of this Court in this case. Appellants' second issue is without merit.

Appellants' third issue is as follows:

Should an audit by a national accounting firm showing a large undistributed loss at October 2 (the date of plaintiff's withdrawal as a partner) be rejected from consideration for any of the reasons assigned for such rejection in a Report of April 7, 1976 by the Special Master, a lawyer appointed by the Court to determine the interest of the withdrawing partner?

■ The reasons given by the Master are not grounds for rejection of his findings as approved by the Chancellor. The former opinion of this Court cited adequate reason for caution in consideration of any "accounting" submitted by defendants. The Master, as a finder of fact, was at liberty to exercise his discretion and best judgment as to what weight or consideration he would accord any evidence offered

to him. Since the Chancellor approved of the Master's report, it is binding on this Court unless it is outside the reference, contains an error of law or is unsupported by any evidence. Such is not the case.

Appellants' third issue is without merit.

Appellants' fourth issue is as follows:

Under a partnership agreement providing that in settling with a withdrawing partner readily marketable securities should be "valued at the net sum for which they are, or could be, sold in the open market", should stock exchange seats be treated as readily marketable securities?

■ Appellants argue a number of factual circumstances without citation to the record. This Court is not under a duty to minutely search a voluminous record to verify numerous unsupported allegations in brief.

■ This Court is satisfied that the Master reached a just and equitable result in respect to the value of the stock market membership.

Appellants' fourth issue is without merit.

Appellants' fifth issue is as follows:

Where a withdrawing partner sues for an accounting and asks for judgment for the value of the stock in an affiliated corporation which was used as capital by the firm, and where he elects to sue for interest on such value until paid, is he entitled to collect both interest and profits attributable to the use by the firm of said stock as part of his capital?

The former opinion of this Court on petition to rehear stated:

As a stockholder, claimant was entitled to present value of stock and interest, and no more. As a partner, he was and is entitled to his share of any benefit derived by the partnership by the 'loan' of his stock certificates to the partnership.

■ The gravamen of this issue is that this Court was in error in making the quoted declaration. The time and manner of correcting any conceived error in the action of this Court was by further petition to rehear or by appeal. Neither course was timely pursued. After the acquiescence in the mandate of this Court without complaint and after further procedure in conformity therewith, it is now too late to question the correctness of the former holding of this Court.

Appellants' fifth issue is without merit.

Appellants' sixth issue is as follows:

Where the withdrawing partner elects in his complaint to sue for profits attributable to the use of his interest in the firm (other than the aforesaid stock in the corporation) and it is found by answering either Question 1 or Question 2 in the affirmative that he has such an interest, should his share in the profits, after his withdrawal, be based on his former percentage interest in the profits and losses of the firm rather than on an allocation of profits based on the ratio of his interest to the entire capital of the firm?

■ This Court fails to discern anything in this issue above the level of logomachy (a game of words). By eliminating the part of profit attributable to the efforts of the remaining partners, a result was reached which is the equivalent of what appellants contend for, i.e., the profit attributable to the continued use of the assets belonging to plaintiff. There is no merit in the suggestion of appellants that in some undefined manner, the share of plaintiffs in the partnership was or is subject to some form of segregation, separation or identification and that the profits of the partnership are susceptible to unequal allocation to various partnership shares so as to demonstrate that while another partner's share of equal size was producing a profit, the share of plaintiff was not.

Appellants' sixth issue is without merit.

Appellants' seventh issue is as follows:

Was the fee awarded the Special Master excessive?

■ Essentially, the argument of appellants is that the Master misstated the amount of time spent and/or the time stated was not reasonably necessary. Even if

the appellants did not waive this question by failure to pursue it before the Chancellor, this Court is satisfied that the amount of compensation awarded the Master was within the bounds of the discretion of the Chancellor and was not unreasonable.

Appellants' seventh issue is without merit.

Each and every issue presented by appellants has been found to be without merit.

No issue is made as to the percentage allocation of profits since the withdrawal of plaintiff from the partnership. Absent pleading and evidence otherwise, it is presumed that, at all material times after withdrawal, the share of the plaintiff being used by the partnership continued in the same proportion as at the time of withdrawal.

This Court is not oblivious to the substantial impact of the result of this case upon the parties. Likewise, this Court is aware of the circumstances which would cause both sides of this controversy to believe fervently in the justice of their respective causes.

The Master, the Chancellor and this Court have sought a just decision through a labyrinth of confusing verbiage, dealings and accounting. Through it all, the guiding principle has been that contracting parties must abide by their contract, litigating parties must appeal judicial decisions or live with them, and that rights are not determined by arbitrary book entries but by the true facts as they existed at pertinent times.

The decree of the Chancellor is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded for further proceedings.

Affirmed and remanded.

LEWIS, J., and T. MACK BLACKBURN, Special Judge, concur.