IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 15, 2005 Session

## NATIONAL BANK OF COMMERCE v. UNIVERSAL TRANSACTION CONSULTANTS, INC.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-00-1278-2      Arnold B. Goldin, Chancellor**

_____

**No. W2004-01590-COA-R3-CV - Filed June 1, 2005**

_____

Plaintiff National Bank of Commerce filed a declaratory judgment action seeking a declaration that its agreement with Defendant Universal Transaction Consultants, Inc. was null and void for Defendant's failure to perform a condition precedent. Defendant counter-claimed for breach of contract and tortious interference with contract. The trial court determined that Universal Transaction Consultants had failed to prove damages and dismissed the claims of both parties. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Everett B. Gibson and Andrew R. Carr, Jr., Memphis, Tennessee, for the appellant, Universal Transaction Consultants, Inc.

Lee J. Chase, III, Larry H. Montgomery, and Jeremy G. Alpert, Memphis, Tennessee, for the appellee, National Bank of Commerce.

### MEMORANDUM OPINION[1]

---

[1]Rule 10 of the Tennessee Court of Appeals provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

The subject of this lawsuit is a March 1998 merchant marketing and services contract ("the contract") entered into by Universal Transaction Consultants, Inc. ("UTC"), an independent sales organization ("ISO")[2], and the National Bank of Commerce ("NBC"). In response to a demand letter from UTC, on June 29, 2000, NBC filed a declaratory judgment action in the Shelby County Chancery Court seeking a declaration that the contract was invalid and unenforceable due to UTC's failure to perform the condition precedent of registering as an Independent Service Provider or Member Service Provider. In August 2002, NBC amended its complaint to add, in the alternative, claims for breach of contract and procurement of breach of merchant contracts. UTC answered in September 2001, denying NBC's claims and counter-claiming for damages arising from breach of contract and tortious interference with contracts.

It is undisputed that the contract included the requirement that UTC be registered with credit card associations. Paragraph 2.2 of the contract provided:

> The validity and enforceability of this Agreement are contingent upon both (i) ISO/MSP's being accepted for registration as an Independent Service Provider or Member Service Provider by the Card Associations,[3] and (ii) the acceptance of this Agreement by both Card Associations.

In its counter-claim, however, UTC asserted that it was NBC's duty to register UTC with the credit card associations and that NBC failed to perform this duty despite repeated requests by UTC. UTC further asserted NBC failed to perform "even the most fundamental obligations" under the contract, including monthly reporting and payment obligations.

After nearly three years of protracted discovery, the production of tens of thousands of documents, and a week long trial, the parties each moved for dismissal of the other's claims. On June 10, 2004, the trial court granted both motions. UTC now appeals dismissal of its action. We affirm.

### Issue Presented

In its brief to this Court, UTC failed to include a statement of the issues. At oral argument, however, the parties agreed that the issue presented for our review is whether the trial court erred by determining that UTC had failed to prove damages.

---

[2] An ISO is an entity that brings a portfolio of merchants to a bank for participation in the bank's credit card program. The bank charges the merchants a few percentage points for the merchants' credit card transactions, deducts the bank's income and expenses, issues a monthly statement to the ISO, and pays the ISO a balance.

[3] Paragraph 1.04 of the contract defines "card associations" as Visa U.S.A., Inc. or MasterCard International, Inc.

*Analysis*

In its brief to this Court, UTC reiterates the claims made in its counter-claim that NBC breached the 1998 contract and tortiously interfered with UTC's relationships with its sales agents. According to UTC, by December 1998, UTC had delivered several hundred accounts to NBC but, from the beginning of the relationship, NBC failed to report to or pay UTC in a timely fashion. UTC further asserts that, as a result of NBC's actions, UTC's long-standing relationship with at least one major client was ruined and its relationships with sales agents severely impaired or ruined. It contends that, in early 1999, UTC began to move accounts from NBC to Benchmark Bank. It submits NBC initially agreed UTC could move the accounts, and then reversed course and threatened that no moved account would be deactivated from NBC's billing system. UTC asserts NBC stopped paying anything to UTC in November or December 1999. It contends that NBC simply appropriated accounts provided by UTC, and that it entered into secret agreements with UTC sales agents whereby the agents sent accounts directly to NBC. UTC asserts that, as a result of NBC's breach of contract and intentional interference, UTC lost virtually all of its NBC merchant portfolio, at least two of its principal sales agents, and hundreds of accounts that went directly to NBC rather than through UTC as agreed.

NBC, on the other hand, asserts that UTC began doing business with Benchmark Bank because NBC refused to enter the pornography credit card transaction business, a business from which UTC anticipated considerable profit. It alleges that, in March 1999, UTC terminated its relationship with NBC. NBC asserts UTC made the business decision to leave the merchants at NBC and focus on the pornography venture with Benchmark Bank, and that UTC realized a considerable increase in revenue from that business.

As NBC points out, UTC has failed to include a statement of the issues in its brief to this Court as is required by Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure. We may consider an issue waived where it is argued in the brief but not designated as an issue. *Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). However, because the parties agreed at oral argument that the issue on appeal is whether the trial court erred in determining that UTC had failed to prove damages, we will consider this issue.

UTC's brief fails to direct us to any evidence in the record of proof of an amount of damages. Like the trial court, we have not seen a number that UTC can point to that indicates an amount of damages. As the trial court stated:

> Not once . . . have we seen a number that you can point to with clarity, not speculative, not mathematically to be created at some future moment[,] where you know what [the] damages are. It's the burden of the Counter Plaintiff to prove that. They have just not done so.
>
>        . . . .

-3-

. . . . I don't believe the [c]ourt has any choice, without finding that proof in the record, but to dismiss the claim on the issue of damages.

This Court does not have a duty to minutely search a voluminous record in order to verify claims made in a party's brief. *Schoen v. J.C. Bradford & Co.*, 642 S.W.2d 420, 427 (Tenn. Ct. App. 1982). The trial record before us in this case consists of a six volume technical record, an eleven volume transcript of evidence, ten depositions, and two-hundred fifty-six exhibits. However, we find no reference to or proof of a specific damage amount. Accordingly, we agree with the trial court that UTC has failed to prove damages.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed in all respects. Costs of this appeal are taxed to the Appellant, Universal Transaction Consultants, Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE