
IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 6, 2017 Session

## SONYA C. FRANKLIN SARDON v. TROY EUGENE SARDON

**Appeal from the Circuit Court for Davidson County**
**No. 06D1791          Phillip R. Robinson, Judge**

———————————————————

**No. M2015-01672-COA-R3-CV**

———————————————————

Post-divorce proceeding wherein Mother petitioned the court for a modification of the parenting plan and to increase Father's child support obligation; following a hearing, the court granted her petition. Father appeals the upward deviation to his basic support obligation to pay a portion of the children's extracurricular activities, the failure to give Father credit for additional funds he paid Mother each month, and the award of attorney's fees to Mother. Upon consideration of the record, we discern no error and, accordingly, affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Jamaal L. Boykin, Nashville, Tennessee, for the appellant, Troy Eugene Sardon.

Chandra N. T. Flint, Nashville, Tennessee, for the appellee, Sonya C. Franklin Sardon.

### OPINION

Sonya Sardon ("Mother") and Troy Sardon ("Father") are parents of four children and were divorced by final decree on August 21, 2007. The decree incorporated the parties' Marital Dissolution Agreement and their agreed parenting plan, which designated Mother as primary residential parent and awarded her 245 days of parenting time per year. Father was awarded 120 days of parenting time, to be exercised every other weekend and each week during a Wednesday overnight visit. The plan vested decision-making authority for non-emergency health care and extracurricular activities in both parties but gave Mother sole authority to make educational and religious upbringing decisions. Father was required to maintain health insurance on the children and to pay $2,324.00 per month in child support. In June 2010, the court entered an order modifying

the parenting plan to remove the overnight portion of the Wednesday evening visitation while school was in session, to give Father parenting time every other weekend from 6 p.m. Friday until Monday morning, and to reduce Father's support obligation to $1,632.00 per month.

On March 4, 2014, Mother filed a petition to modify the parenting plan based upon a material change in circumstances. She alleged that her income had changed, that she had access to health insurance for the children, and that Father had not been providing health insurance coverage for the children since 2010. She sought, *inter alia*, the following: that her proposed parenting plan be adopted;[1] that the court set child support consistent with the child support guidelines; that Father be jointly responsible for extracurricular expenses; that Father's child support payments be made through direct deposit; and that Father's parenting time be modified to accommodate the children's school schedules. After mediation was unsuccessful, Father answered the petition. The court ordered the parties to attend a judicial settlement conference, which was also unsuccessful.

A hearing was held on June 16 and 19, 2015, at which Mother, Father, and Father's wife testified; the court entered an order on July 23, 2015, modifying Father's parenting time to accommodate the children's school schedules. The court calculated Father's basic child support obligation to be $1,632.00 per month. The court applied an upward deviation of $160.00 per month for Father's share of extracurricular expenses, resulting in a total obligation of $1,792.00 per month, retroactive to the date the petition was filed, to be paid through wage assignment. The court also required Father to provide medical insurance and, if available through his employer, vision, dental, and orthodontic coverage. The court ordered Father to reimburse Mother $4,578.00 for amounts she paid for medical insurance for the children from June 2013 to December 2014 and awarded Mother $11,500.00 for a portion of her attorney's fees.

Father appeals, asserting that the court erred in three respects. Father contends that the court "misapplied" the child support regulations by ordering an upward deviation in his basic child support obligation to cover the costs of the children's extracurricular activities; he argues that these were not ongoing and that Mother incurred these expenses without consulting him. Father also argues that the court abused its discretion by not giving him credit for the $76.00 extra he paid in child support each month. In addition, Father argues that the court ordered him to pay Mother's attorney's fees because the case did not settle prior to trial and that this decision was "arbitrary and unreasonable."

---

[1] In the proposed plan, Mother remained the primary residential parent. Father was to receive 94 days of parenting time, consisting of visitation every other week from Friday at 6 p.m. to Sunday at 6 p.m., as well as on Wednesdays after school from 6 p.m. until 8 p.m. It also provided that Mother would provide health and dental insurance and that the parties would split the cost of extracurricular activities equally.

As an initial matter, we note that Father's brief fails to comply with Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure, which requires all arguments in an appellant's brief to contain "appropriate reference to the record (which may be quoted verbatim) relied on." In addition, it fails to comply with Rule 6(a)(4) of the Rules of the Court of Appeals, which provides that the written argument with regard to each issue presented contain "[a] statement of each determinative fact relied upon with citation to the Record where evidence of each such fact may be found." Where these rules are disregarded, we are under no obligation to search the record in order to uncover evidence to support Father's contentions. *See Long v. Long*, 957 S.W.2d 825, 828 (Tenn. Ct. App. 1997) (holding that "where a party in its brief on appeal has advanced certain arguments or has set forth what he or she alleged to be facts without any citation to the record, this court is not under a duty to minutely search the record to verify these unsupported allegations") (citing *Schoen v. J.C. Bradford and Co.,* 642 S.W.2d 420, 426 (Tenn. Ct. App.1982)). Indeed, Rule (6)(b) of the Court of Appeals Rules states:

> (b) No complaint of or reliance upon action by the Trial Court will be considered on Appeal unless the argument thereon contains a specific reference to the page or pages of the Record where such action is recorded. No assertion of fact will be considered on Appeal unless the argument upon such assertion contains a reference to the page or pages of the Record where evidence of such fact is recorded.

Turning to the first issue raised by Father, the expenses for extracurricular activities, the court ruled:

> 13. The Court finds that the Child Support Guidelines govern payment of extracurricular activities expenses. Pursuant to Rule 1240-2-4-.07(2)(d)2(i) and (ii), the basic child support obligation is intended to cover average amounts of extracurricular activity expenses, but when such expenses exceed seven percent of the monthly basic child support obligation, the Court shall consider additional amounts as an upward deviation.

> 14. The Court finds that since the filing of Mother's Petition, Mother has incurred $2,489.73 of extracurricular expenses, which constitutes $207.48 per month. The Court finds that because Father's basic child support obligation is $1,632.00 per month, the $207.48 per month of extracurricular expense is slightly less than 12 percent of Father's obligation. The Court finds that Mother is entitled to receive Father's share of those expenses. The Court finds that Father should pay 77 percent of the extracurricular expenses each month, or $160.00 per month, which will be added to Father's child support as an upward deviation.

3

We review this ruling using the abuse of discretion standard, *Reeder v. Reeder*, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012), a succinct statement of which was set forth in *Lee Medical, Inc. v. Beecher*:

> An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

312 S.W.3d 515, 524-25 (Tenn. 2010) (internal citations omitted).

Father argues, without citation to the record, that the expenses should not have supported an upward deviation because the expenses "were not ongoing expenses" but "were one-time expenses incurred for the one-time purchase of instruments." The court examined Father regarding his concerns, culminating in the following colloquy:

> THE COURT: . . . Mr. Sardon, at least three of your children are somehow engaged in some type of musical education. Understanding that you take the position that . . . your former wife didn't consult with you about this and you didn't have any input in that, are you opposed to the children participating in these activities or is your complaint you just felt like you weren't consulted? . . .
> MR. SARDON: I'm in full support of my children involved in these activities.
> THE COURT: Are you for the children to the extent that you're prepared to make some contribution to their musical education or do you think it's a waste of money and that they shouldn't be participating? . . . Is this something you think the children ought to be participating in and you want to contribute financially to it or is your position that, you know, I'm happy for them to participate, but I think I pay enough money through child support to make my contribution?
> MR. SARDON: With all due respect, Your Honor, I do agree with supporting the children's activities financially; however, the history between me and my ex-wife, I'm never consulted beforehand. My thing is, before I make a commitment, let's discuss it and let's get a clear understanding of what the cost is concerning those activities. . . .
> THE COURT: . . . One thing, though, I do want you to remember, by agreement, Ms. Sardon made educational decisions and at least two of the three, I think the child took piano which is not under the auspices of the school, but two of the three are educational classes because the children get

4

. . .grades. But the other thing I hope no one has lost sight of that I'm concerned that they have, if you look at the major decisions as I understand it under the original Parenting Plan, two of those are marked decisions that she makes and two of them are marked joint. But if you read under where it is marked joint, it says that in the event of a disagreement, the mother has final say, which means that the mother, even in extracurricular activities, has final say. So, you understand even if y'all discussed it and you didn't agree, she could still go ahead with it? Do you understand that is what the Court Order is?

MR. SARDON: I was not aware of that.

Mother testified at length regarding the extracurricular activities in which the children were involved, including band and sports, and the cost of same; the findings are supported by her testimony. As noted above, Father agreed that the children should be participating in the extracurricular activities; his concern centered on the fact that Mother did not consult with him prior to enrolling the children. Under the child support guidelines, the cost of extracurricular activities supports an upward deviation from the basic child support obligation. Tenn. Comp. R. & Regs., 1240-2-4-.07 (2)(d)(2)(i). The decision to order an upward deviation is supported by the evidence and applicable regulation; accordingly, we find no abuse of discretion in the court's application of the child support regulations in determining the amount of support owed.

Father raises as an issue that the court erred "when calculating the child support arrearage" by failing to give Father "proper credit" for $78.00 he contributed monthly in excess of his child support obligation of $1,632.00. The court, however, did not make a determination that Father was in arrears in his support obligation or enter a judgment for an arrearage; rather, the only money judgments awarded were for $4,578.00 to reimburse Mother for medical insurance premiums she paid for the children from June 2013 through December 2014, and $11,500.00 to reimburse Mother for her attorney's fees. In his brief, Father does not address the fact that he failed to provide insurance as ordered; rather, he addresses this issue by contending that the court should have awarded a credit for the "extra payment" on his monthly child support. We will consider this issue as whether the "proper credit" to which Father refers is a credit against the judgment for the health insurance premiums.

In the parenting plan which was approved and made the order of the court when the parties divorced, Father was to provide medical insurance for the children. In the order under appeal, the court held:

18. The Court notes that Father failed to comply with the Court's ruling regarding major medical insurance, and even when Father had major medical insurance available, Father failed to put the children on that

5

insurance, leaving them with insurance provided by the taxpayers or by the Mother.

Father testified that he lost his job, which provided health insurance, in 2010, resulting in the children's enrollment in TennCare in 2011; that he got a job in 2011 and became eligible for health insurance through that employment in 2013; that he secured health insurance through his employment for himself but not the children; that he had sufficient income in 2011, 2012, and 2013 to purchase health insurance for the children but allowed them to remain on TennCare until July 12, 2013, when Mother covered the children under the insurance offered through her employment. Giving context to this issue is the following excerpt from a letter Mother's counsel wrote Father in July 2013, after Mother secured employment:

2. As you know, Ms. Sardon has obtained full-time employment with the Williamson County School System. As a result, she is eligible for health insurance benefits for the children. As the children are no longer qualified to be on TennCare and have been removed, Ms. Sardon has begun covering them under the Williamson County insurance. The cost of that insurance is $228.00 per month. The fact that she will cover the children with medical insurance is reflected on the revised Parenting Plan and the monthly cost is reflected on the attached Child Support Guidelines.

3. Ms. Sardon's new employment also resulted in a change to her income, which is reflected in the revised Parenting Plan and on the Child Support Guidelines. However, although it is required by your Parenting Plan, the two of you have not exchanged tax returns each year and we are therefore unsure of your income at this time. The enclosed Plan and Guidelines use your income as set forth in the 2010 Order Modifying Parenting Plan. Please send a copy of your 2012 tax return so that we may use your current and proper income in the child support calculations. In the meantime, the changes in income, insurance coverage, and number of days have resulted in a new child support amount of $1,708.00 per month.

In the absence of a cogent and factually supported argument, we are under no obligation to construct an argument for Father. *See* Tenn. R. App. P. 27 (a)(7). On the record presented, we cannot conclude that the court erred in not crediting Father with the $76.00 he paid over the $1632.00 child support obligation set in the June 2010 order. The record shows that the parties were attempting to address the fact that, through her employment, Mother was providing insurance for the children, as well as the fact that Father's basic child support obligation would change as a result of his increased income.

Additionally, in his brief on appeal, Father states, without citation to the record, that the court "appears to have awarded [Mother] her attorney's fees because the Court

6

believed that the matter should have been settled without trial." In the order, the court stated the following relative to the award of fees: "The Court finds that since the majority of the issues before the Court were determined in favor of Mother, the Mother shall be awarded a portion of her reasonable attorney's fees incurred beginning in January 2014." Tennessee Code Annotated section 36-5-103(c) permits the court to award attorney's fees "in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of custody or the change of custody or any child or children . . . in the discretion of such court." This was such a proceeding, wherein Mother sought to modify the residential parenting schedule and to address matters of support, including the cost of the children's extracurricular activities and Father's failure to provide health insurance. The award was permitted by the statute, and Father has failed to demonstrate that the court abused its discretion.

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.

_____
RICHARD H. DINKINS, JUDGE

7