# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 20, 2014 Session

## SCOTT MCILLWAIN, ET AL. v. MICHAEL SCOTT HOOVER, ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 11-1171-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2013-01277-COA-R3-CV - Filed May 19, 2014**

---

This appeal concerns the nonpayment of commissions to a business broker. The defendants hired the plaintiff to assist in the sale of all or part of their small business. The parties' agreement provided that if the defendants entered a transaction with any entity that the plaintiff solicited on their behalf within a certain time period, they would be obliged to pay the plaintiff a percentage of the purchase price. During the stated time period, the defendants sold all of their business's assets to a third-party company that also hired them as at-will employees. The plaintiff demanded a commission for the sale, claiming that he met with the third-party company on the defendants' behalf prior to the sale. The defendants refused to pay. The plaintiff filed this lawsuit claiming damages for breach of contract, promissory estoppel, and unjust enrichment. The trial court granted summary judgment to the defendants, concluding that there were no genuine disputes of material fact because the transaction between the defendants and the third-party company was not the type of transaction the defendants hired the plaintiff to arrange. The plaintiff appealed. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Philip L. Robertson and Andrew L. Power, Franklin, Tennessee, for the appellants, Scott McIllwain and Alliant Capital Advisors, LLC.

Stanley Allen Kweller, Nashville, Tennessee, for the appellees, Michael Scott Hoover, Joseph Stanford and Accurate Investment Group, LLC.

## OPINION

### I. BACKGROUND

Scott McIllwain is a business broker–someone who acts as an intermediary between purchasers and sellers of businesses. In January 2010, Michael Scott Hoover and Joseph Stanford employed McIllwain to find a purchaser for a mortgage brokerage business they jointly owned and operated, Accurate Investment Group, LLC ("Accurate Mortgage"). The parties' written consulting contract gave McIllwain the exclusive right to "sell, lease, trade, or otherwise dispose of all or any part of the tangible or intangible assets" of Accurate Mortgage. If McIllwain successfully arranged a transaction, Hoover and Stanford agreed to pay him a percentage[1] of the total purchase price, which the contract broadly defined as "any cash, securities, infusion of capital funds, credit arrangements, assets, promissory notes, employment or consulting agreements which are in excess of an equivalent manager's compensation, covenants not to compete, royalty fees, performance payments . . . or any other such agreements intended to convey value to the Seller." Though the original term of the contract only lasted for sixty days, it is undisputed that the parties orally extended it through November 30, 2010. Notably, the contract also provided that Hoover and Stanford would be required to pay McIllwain a commission on transactions taking place after that date in the event that:

> Seller sells, leases, trades, or otherwise disposes of all or any part of the Business within twelve (12) months from the termination date of the Consulting Period to any person, firm, or entity referred to the Business by Broker; or who received information about the Business from Broker, or negotiated with Broker during the term of the Consulting Period, or who became aware of the Business through the efforts of Broker during the Consulting Period.

In August 2010, after a potential sale that McIllwain had arranged fell through, the parties expanded McIllwain's scope of performance to include seeking additional funding for Accurate Mortgage through a credit facility. If McIllwain was successfull, Hoover and Stanford agreed to pay him one percent of the amount of monthly credit that he obtained on Accurate Mortgage's behalf.

On November 9, 2010, prior to the end of the verbally extended contract term, McIllwain had a lunch meeting with Stonie O'Briant and George Phillips, the CEO and

---

[1]Eight percent (8%) of the first $500,000, plus six percent (6%) of the next $250,000, plus four percent (4%) of the balance of the total purchase price.

general counsel of Acopia, LLC ("Acopia") respectively. In his deposition, McIllwain stated that he specifically discussed the possibility of a merger between Accurate Mortgage and Acopia with O'Briant and Phillips during the meeting. Conversely, O'Briant stated in his deposition that although McIllwain said that he represented a mortgage company potentially interested in selling, he never mentioned that he was representing the defendants, nor did he talk about any specifics relating to his client during the meeting. In any event, no deal was reached for the sale or other disposition of Accurate Mortgage by the end of the contract term on November 30, 2010.

In a December 2, 2010 email to Hoover and Stanford, McIllwain acknowledged that his exclusive right to sell Accurate Mortgage had ended. However, because he could still earn a fee on transactions between Accurate Mortgage and entities that he had already solicited on its behalf, McIllwain vowed to continue pursuing deals with his existing contacts. McIllwain stated that he would provide Hoover and Stanford with a list of those existing contacts, however no such list was ever sent.

On February 24, 2011, Hoover and Stanford entered into an agreement with Acopia titled "SALE AND PURCHASE OF CERTAIN ASSETS AGREEMENT." Pursuant to the sale agreement, Acopia paid $250 to Hoover and Stanford in exchange for all of Accurate Mortgage's tangible property, as well as its office equipment leases, its goodwill and internet domain name, and its leased office space. The sale agreement also required Hoover and Stanford to sign separate employment contracts with Acopia to operate a mortgage brokerage branch of Acopia to be located at the former location of Accurate Mortgage. The employment contracts provided that Hoover and Stanford would each be paid a yearly salary of $120,000 and would split 100% of the branch's profits. Additionally, the sale agreement provided that in the event that the employment contracts of both Hoover and Stanford were ever terminated, they would have the option to buy back all of the assets covered in the agreement for $250.

On February 28, 2011, Accurate Mortgage ceased doing business as an entity. On March 1, 2011, Hoover and Stanford became employees of Acopia. After learning of the sale agreement Hoover and Stanford reached with Acopia, McIllwain contended that he was entitled to a commission on the transaction. Hoover and Stanford disagreed and refused to pay McIllwain, contending that he was not entitled to a commission because they had simply closed Accurate Mortgage and been hired by Acopia.

On August 25, 2011, McIllwain and Alliant Capital Advisors, LLC[2] (collectively, the

_____

[2]McIllwain was affiliated with Alliant Capital Advisors, LLC during all times relevant to this case.
(continued...)

"plaintiffs") filed this suit in the Chancery Court of Davidson County against Hoover, Stanford, and Accurate Mortgage (collectively the "defendants"). The plaintiffs alleged that the defendants were liable for breach of contract, promissory estoppel, and unjust enrichment because they failed to pay McIllwain the commission for arranging their transaction with Acopia. The plaintiffs alleged that the transaction was a merger of Accurate Mortgage and Acopia, and that it was the result of McIllwain's efforts to secure a buyer on the defendants' behalf. The plaintiffs contended that the merger gave Hoover and Stanford access to at least $10,000,000 credit to fund loans during March 2011, and that McIllwain was entitled to one percent of that amount, or $100,000. The defendants replied, denying that McIllwain had done any work for which they owed him a commission or fee under the contract.

Prior to trial, the defendants filed a motion for summary judgment and a statement of undisputed facts, which they supported with affidavits of Stanford and O'Briant. The defendants stated that they were not liable to McIllwain because he never sold or arranged any agreeable deal between Accurate Mortgage and any other entity. The defendants stated that they spoke to O'Briant and representatives of Acopia about a potential merger in 2008, prior to meeting McIllwain. The defendants stated that McIllwain never discussed Accurate Mortgage with O'Briant or Phillips. The defendants stated that they did sell the tangible assets of Accurate Mortgage to Acopia for $250. However, the defendants maintained that the actions of Accurate Mortgage going out of business and Hoover and Stanford subsequently being hired by Acopia were not actions that entitled McIllwain to a commission.

The plaintiffs filed a timely response in which they objected to the defendants' motion for summary judgment. The plaintiffs' reply included a response to the defendants' statement of undisputed material facts in which the plaintiffs either admitted, admitted for purposes of the summary judgment motion, or denied each fact asserted by the defendants. The plaintiffs stated that McIllwain was owed a commission for arranging a transaction that, in substance, was the sale of Accurate Mortgage as a going concern. The plaintiffs stated that Hoover and Stanford did not meet O'Briant until 2010. The plaintiffs stated that in November 2010, McIllwain met with O'Briant and Phillips to discuss a possible deal between Acopia and the defendants. The plaintiffs stated that the defendants were made aware of the meeting. The plaintiffs stated that although Acopia only paid $250 for the tangible assets of Accurate Mortgage, the agreement between the defendants and Acopia allocated a market value of $19,275 to those assets. The plaintiffs admitted that Hoover and Stanford were employees of Acopia with no ownership interest in the company, but pointed

---

[2](...continued)
Alliant Capital Advisors, LLC is an intermediary firm that specializes in the purchase and sale of privately held businesses, and is a plaintiff in this case.

out that pursuant to their employment agreements they receive 100% of the profits of the Accurate Mortgage division of Acopia, and have the right to buy back all of the assets they sold to Acopia for $250. The plaintiffs stated that because Acopia acquired the tangible assets of Accurate Mortgage and its goodwill, assumed substantially all of Accurate Mortgage's employees, was assigned Accurate Mortgage's leases, and continues to use the "Accurate Mortgage" trademark, the transaction between Acopia and Hoover and Stanford was actually the sale of Accurate Mortgage as a going concern. Each fact that the plaintiffs contended to be in dispute was accompanied by a citation to the record.

During a hearing on May 3, 2013, the trial court orally granted the defendants' motion for summary judgment on each of the plaintiffs' causes of action. On May 13, 2013, the trial court released a written order in which it outlined several reasons for its ruling in its findings of fact and conclusions of law. First, the court noted that the facts stated by the plaintiffs in opposition to summary judgment were not designated in a statement of undisputed material facts. Stated the court:

> The failure of the plaintiffs to specify the particular facts upon which they seek for the Court to draw the inference that the defendants' affiliation with Acopia is in substance and reality the sale of defendants' business as a going concern is sufficient to grant the motion for summary judgment in defendants' favor.

Second, the court concluded that the defendants' at-will employee relationship with Acopia did not fall within the types of transactions listed in the parties' contract that would entitle McIllwain to a commission. Third, the court stated that the plaintiffs failed to carry their burden on summary judgment of demonstrating to the court how the inference that Accurate Mortgage was sold to Acopia as a going concern can co-exist alongside the undisputed fact that the defendants are at-will employees of Acopia. Finally, the court concluded that the defendants' relationship with Acopia was not susceptible to the method of calculating McIllwain's commission the parties prescribed in the contract. The court stated that the impossibility of quantifying the plaintiffs' damages "(1) further detracts from the plaintiffs' assertion that it is entitled to recovery and (2) makes trying the case futile."

On May 24, 2013, the plaintiffs timely filed a notice of appeal to this Court. The sole issue raised by the plaintiffs on appeal is whether the trial court erred in granting the defendants' motion for summary judgment.

## II. DISCUSSION

Summary judgment is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Estate of Brown*, 402 S.W.3d 193, 197 (Tenn. 2013).

However, summary judgment is not appropriate when there is a genuine dispute regarding material facts. Tenn. R. Civ. P. 56.04. Summary judgment is likewise not appropriate when more than one conclusion or inference can reasonably be drawn from the facts. *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010). Accordingly, summary judgment should only be granted when the undisputed facts, as well as the inferences reasonably drawn from those facts, support the conclusion that the moving party must be granted a judgment as a matter of law. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012). Because a trial court's grant of summary judgment is a matter of law, it is reviewed *de novo* by this Court with no presumption of correctness. *Id.* Thus, appellate courts must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 ("Rule 56") have been satisfied. *Id.* In reviewing an order granting summary judgment, the court must consider the evidence in the light most favorable to the non-moving party and allow all reasonable inferences in its favor. *Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 632 (Tenn. 2009).

Turning now to the present case, we note initially the position of the trial court and the defendants that summary judgment is appropriate in this case regardless of McIllwain's credibility. Clearly, the parties dispute whether McIllwain proposed a merger between Accurate Mortgage and Acopia during his November 2010 meeting with O'Briant and Phillips. McIllwain contends that he did propose the merger, while O'Briant contends that Accurate Mortgage was never mentioned. Like the trial court, we must construe issues of witness credibility in favor of the nonmoving party. *See Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Going forward, we therefore assume that McIllwain's version of events is true–that he did propose the merger of Accurate Mortgage and Acopia to O'Briant and Phillips during the meeting, and that he subsequently told Hoover and Stanford about the meeting. The trial court held that even assuming the truthfulness of McIllwain's version of events, the plaintiffs did not state a claim for any of the causes of action they asserted. For several reasons, we must disagree with the trial court's holding.

First, it appears the trial court concluded in its order that the plaintiffs' response to the defendants' motion for summary judgment failed to comply in form with Rule 56. The court stated that it was not clear the precise facts upon which the plaintiffs were relying regarding the defendants' affiliation with Acopia. Thus, the court stated that the plaintiffs failed to meet their burden of demonstrating how the court could reasonably draw the inference that Accurate Mortgage was sold to Acopia as a going concern. We do not agree with the trial court's conclusion.

In litigating a motion for summary judgment, the party moving for summary judgment has the initial burden of demonstrating that no genuine issue of material fact exist and that it is entitled to judgment as a matter of law. *Green v. Green*, 293 S.W.3d 493, 513 (Tenn.

2009). In order to assist the court in determining the necessity of a trial on the merits, Rule 56.03 requires that any motion for summary judgment be accompanied by a separate and concise statement of undisputed material facts. Tenn. R. Civ. P. 56.03. Once the moving party makes a properly supported motion, the burden of production shifts to the nonmoving party to produce evidence of specific facts establishing that genuine issues of material fact exist. *Byrd*, 847 S.W.2d at 215. The nonmoving party must respond to each fact set forth by the moving party and either admit that it is undisputed, admit that it is undisputed for purposes of the summary judgment motion, or demonstrate that it is disputed with support for specific citations in the record. Tenn. R. Civ. P. 56.03. The nonmoving party can demonstrate that a fact is disputed by:

> (1) pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) by rehabilitating the evidence attacked by the moving party's papers, (3) by producing additional evidence showing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining why further discovery is necessary as provided for in [Tenn. R. Civ. P., Rule 56.06].

*Byrd*, 847 S.W.2d at 215 n.6 (citation omitted). If the nonmoving party fails to comply with Rule 56.03 in its response, the trial court may, at its discretion, refuse to consider the nonmoving party's factual contentions even where such facts are ascertainable from the record. *Holland v. City of Memphis*, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003).

Here, the trial court found that the defendants satisfied their initial burden by submitting a statement of undisputed material facts indicating that the plaintiffs could not establish essential elements of any of their claims because McIllwain never arranged any transaction between Accurate Mortgage and any other entity. Additionally, the defendants stated that Accurate Mortgage was never involved in any transaction contemplated by the parties' original contract as one for which they would owe McIllwain a commission.

The plaintiffs then submitted a response to the defendants' statement of undisputed facts in which they demonstrated that the material facts alleged by the defendants were, in fact, disputed. First, the plaintiffs stated that McIllwain met with O'Briant and Phillips in November 2010 for the purpose of exploring a deal between Accurate Mortgage and Acopia. Thus, the plaintiffs demonstrated a dispute regarding whether McIllwain arranged the transaction between the two companies. Second, the plaintiffs stated that because Acopia purchased all of Accurate Mortgage's tangible assets, acquired its goodwill, was assigned all of its leases, ultimately assumed substantially all of its employees, and continued to use the "Accurate Mortgage" trademark, Acopia essentially purchased Accurate Mortgage as a going concern. Thus, the plaintiffs demonstrated a dispute regarding whether the transaction

itself was the type for which McIllwain would be owed a commission for his efforts. Each of the plaintiffs' assertions is supported by a citation to the record. Based on the foregoing, we find that the plaintiffs' response complied in form with Rule 56. To the extent that the trial court disregarded the plaintiffs' factual contentions, it did so in error.

The trial court stated that the plaintiffs did not meet their burden as the nonmoving party because they failed to demonstrate how the inference that Accurate Mortgage was sold to Acopia as a going concern could coexist with the undisputed fact that Hoover and Stanford were hired as at-will employees of Acopia. The trial court stated that in the absence of such an inference, the plaintiffs had no basis to prove a claim of breach of contract, promissory estoppel, or unjust enrichment. In spite of that assertion, we are not aware of any authority, nor have the parties' cited any, supporting the assertion that the sale of a company as a going concern is mutually exclusive with employment by the purchaser. Black's Law Dictionary defines a business that is a "going concern" as "[a] commercial enterprise actively engaging in business with the expectation of indefinite continuance." BLACK'S LAW DICTIONARY 712 (8th ed. 2004). In their response, the plaintiffs pointed out that Hoover and Stanford sold essentially all of the tangible and intangible assets of Accurate Mortgage to Acopia. In the past, we have recognized that such a transaction is one way to sell a business as a going concern. *See Schoen v. J.C. Bradford & Co.*, 642 S.W.2d 420, 426 (Tenn. Ct. App. 1982) ("The business may be sold as a complete unit, name assets, management and personnel, so that its operation would continue without perceptable [sic] change."). The plaintiffs cited portions of Stanford's deposition in which he stated that, apart from who was funding the loans, Accurate Mortgage's business remained essentially the same after becoming a division of Acopia. Stanford admitted that a person who did not investigate the company's source of funding might not perceive any difference in its operations after the transaction with Acopia. Considering the evidence presented in the light most favorable to the plaintiffs, it is clear that the plaintiffs demonstrated the existence of a disputed material fact as to whether Acopia purchased Accurate Mortgage as a going concern. We therefore reject the trial court's contrary holding as a basis for granting summary judgment.

Moreover, the sale of Accurate Mortgage as a going concern was not the only method by which McIllwain could earn a commission pursuant to the parties' contract. The contract provided that McIllwain would earn a commission on the sale of all or any part of the business. By the defendants' own admission at oral argument, the sale of Accurate Mortgage's assets to Acopia for $250 was a sale of part of the business. At the very least, assuming the truthfulness of the facts as they were asserted by the plaintiffs, summary judgment is clearly not appropriate in this case because McIllwain is entitled to a commission on the $250 sale.

The defendants contend that they cannot be liable to McIllwain for any transaction

with Acopia because McIllwain failed to send a list of his existing contacts as he stated he would in his December 2, 2010 email. They argue that in doing so, McIllwain violated his own contractual terms. We must disagree. Though McIllwain stated he would send the list, his statement was never part of the parties' contract, nor can it be construed as a modification of the contract. The modification of a previously existing agreement that imposes new obligations on one of the parties is unenforceable for lack of consideration unless it also imposes a new obligation on the other party. *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 406 (Tenn. 2002). Based on the facts before us, we find that McIllwain's representation that he would send a list of existing prospects was clearly a gratuitous promise, not an enforceable provision of the contract.

Finally, we address the issue of damages. In its order, the trial court stated that the impossibility of quantifying the plaintiffs' claim for damages made trying the case futile. However, as we have noted in the past, courts will allow recovery for the breach of a contract even when the exact amount of damages is impossible to prove. *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983). Uncertain and speculative damages are only prohibited when the existence of damages is uncertain, not when the amount is uncertain. *Id.* The plaintiff must present enough evidence to allow the fact-finder to fairly and reasonably assess damages. *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 789 (Tenn. Ct. App. 2010). Here, there is ample evidence with which to reasonably assess damages. The parties' original contract provided that if McIllwain arranged an agreeable transaction, the defendants would pay him a commission calculated as a specific percentage of the total purchase price for the transaction. The contract defined total purchase price broadly, essentially encompassing anything intended to convey value to the defendants. It is not disputed that the defendants received $250 in cash from Acopia in exchange for Accurate Mortgage's assets. Additionally, if other assets were exchanged or agreements were made with the intent of conveying value to the defendants, their worth must also be considered in calculating McIllwain's commission. We therefore must reverse the trial court's holding that trying this case would be futile because the transaction between the defendants and Acopia was not susceptible to the fee method prescribed in the agreement.

### III. HOLDING

Based on the foregoing, we conclude that genuine issues of material fact make summary judgment improper in this case. We therefore reverse the trial court's grant of summary judgment to the defendants, and remand this action for further proceedings in accordance with this opinion. The costs of this appeal are taxed to the appellees.

_____
DAVID R. FARMER, JUDGE